**STATE of Missouri, Respondent,**

v.

**Charles WITHERS, Appellant.**

No. 48377.

Supreme Court of Missouri,
Division No. 1.
June 12, 1961.

Frieze & Crandall, Carthage, Edward G. Farmer, Jr., Joplin, for appellant.

Thomas F. Eagleton, Atty. Gen., Edward A. Glenn, Sp. Asst. Atty. Gen., for respondent.

HOLLINGSWORTH, Judge.

▮ Defendant has appealed from the sentence imposed upon him in accordance with the verdict of a jury finding him guilty of the crime of immoral molestation of a female minor, as that offense is defined in § 563.160 RSMo 1959,[1] and assessing his punishment at imprisonment in the State Penitentiary for a term of five years and a fine of $500. Although represented by counsel at trial, no brief has been filed in his behalf in this court. We, therefore, review all valid assignments of error set forth in the motion for new trial filed in his behalf, as required by S.Ct. Rule 27.20, V.A.M.R., and the portions of the record required by S.Ct. Rule 28.02.

The motion for new trial assigns error (1) in the overruling of defendant's application for continuance filed following the filing of an amended information on the morning the cause came on for trial; (2) in the refusal of defendant's motion to suppress as evidence and the later admission into evidence of certain photographs constituting visual proof of defendant's guilt; (3) in (allegedly) permitting the prosecuting attorney to display before the jury and to refer to statements signed by several girls relating to sexual misconduct of defendant with them; (4) in permitting improper cross-examination of defendant relative to molestation of other female minors and his arrest therefor; and (5) in the refusal of the court to dismiss the case and to direct that defendant be proceeded against under §§ 202.700–202.770, relating to criminal sexual psychopathic persons.

The essential facts are not controverted. During the month of August, 1958, and for several years prior thereto defendant, Charles Withers, and his wife, Earlene, operated a motel not far from the home of a Mrs. H—— and her daughter, Carolyn. The age of the latter at that time (August, 1958) was fourteen years. At the instance of Earlene, Carolyn visited defendant and Earlene at the motel on two occasions. On the first occasion she stayed all night. Nothing of moment occurred during that visit.

1. All statutory references herein are to RSMo 1959 and V.A.M.S., unless otherwise indicated.

About one week later, on August 4, 1958, Carolyn again visited them. On that visit, Earlene asked Carolyn if she knew of some girl that "would go with (defendant) Charles," which inquiry Carolyn answered to the negative. Defendant then asked Carolyn if she "would go with" him and Carolyn refused. Earlene and Carolyn then went into the bedroom followed by defendant. Earlene asked Carolyn if she wanted to take some pictures and suggested that Carolyn remove her clothing, stating that if she refused defendant would remove it. Defendant, Earlene and Carolyn then and there completely disrobed. Carolyn was provided with a camera and, after being shown how to use it, took a picture of Charles and Earlene standing nude side by side; defendant took a picture of Earlene and Carolyn standing nude side by side; and Earlene took a picture of defendant and Carolyn standing nude side by side. Defendant then pulled Carolyn down on the bed and, as they, nude, lay side by side upon the bed in lewd embrace, Earlene took their picture. Defendant then posed himself and Carolyn in a posture of lewd embrace upon the floor and Earlene took their picture in that position. At the conclusion of the taking of these pictures, Carolyn donned her clothing and was escorted to her home by Earlene.

At the trial Carolyn identified the photographs, Exhibits 1, 2, 3 and 4, hereinabove referred to and they were, over the objection of defendant, admitted into evidence and shown to the jury.

Dr. J. D. Coombs, a duly qualified physician, employed as a specialist in psychiatry at State Hospital No. 3 in Nevada, testified (on May 20, 1960) in behalf of defendant that defendant, a voluntary patient at the hospital, was at trial time and when first seen by the witness, on January 16, 1960, "mentally sick"; that he could not state whether defendant was mentally sick in 1958; and that, in the opinion of the witness, defendant, "in the ordinary sense," knew the difference between right and wrong.

Such additional portions of the proceedings and evidence as are necessary to the ruling of any of the errors assigned will be hereinafter set forth.

■ Upon return of the verdict the trial judge, in open court, with counsel for both the State and defendant present, granted defendant due allocution and then and there rendered and entered final judgment therein, expressly granting defendant 30 days in which to file motion for new trial, and said motion was thereafter so filed. It must be here observed that in entering formal judgment prior to the expiration of the time granted defendant by the court for the filing and adverse determination of his motion for new trial, the trial court unquestionably erred. State v. Keller, 304 Mo. 63, 263 S.W. 171, 173; State v. Parker, Mo., 310 S.W.2d 923, 924; State v. Morrow, Mo., 316 S.W.2d 527. However, inasmuch as the judgment is regular on its face and defendant was granted allocution prior to sentence, we think that, although the judgment was prematurely entered of record, this court may treat it as becoming effective upon the overruling of defendant's motion for new trial. State v. West, Mo., 270 S.W. 279, 281.

■ The trial court did not err in overruling defendant's application for continuance. The record shows that following preliminary hearing held on December 9, 1959, defendant was bound over to the circuit court. On December 21, 1959, information was filed, to which defendant waived formal arraignment and entered a plea of not guilty. That information alleged the substance of the molestation hereinabove shown by the evidence to have been committed by defendant upon Carolyn. When the case was called for trial on May 19, 1960, defendant's motion to quash the information was filed and sustained by the trial court, whereupon the State immediately filed an amended information, more explicitly setting forth the details of the facts above set forth. Defendant thereupon filed motion for a continuance alleging insufficiency of

time in which to study the charges contained in the amended information and time to prepare for trial. After hearing statements of counsel for both parties, the court held that defendant would not be prejudiced by proceeding to trial. S.Ct. Rule 24.15 provides that no amendment of an information "shall cause a delay of the trial unless the defendant shall satisfy the court that such amendment * * * has made it necessary that [defendant] have additional time in which to prepare his defense." There is a total lack of any showing whatever that defendant was or could have been prejudiced by reason of the amendment made to the original information. The assignment is overruled.

■ Following the overruling of defendant's application for continuance, defendant filed his motion to suppress the photographs taken of and by Carolyn, Earlene and defendant. That motion was predicated solely upon grounds that the photographs were seized without a search warrant and not in connection with the arrest of defendant; that they were not in the condition as when seized for the reason that they were thereafter developed by the law enforcement officials of Jasper County from the undeveloped film thereof; and that they were not made by defendant and did not prove or disprove any issue. The evidence adduced by defendant in support of his motion to suppress is as follows: On August 20, 1958, Deputy Sheriff Miller, bearing a warrant for the arrest of Earlene for "the crime of child molestation" of another minor, went to the motel, where he found both defendant and Earlene. Following arrest of Earlene, he stated to her and defendant that he was searching for "pictures of teen-age girls." Defendant told him to "go ahead and search, that all they had was family pictures." Defendant opened a drawer, revealing, among a number of photographs, two rolls of undeveloped picture film. When these were taken from the drawer, defendant was asked to whom they belonged, to which he replied, "I don't know. It must have been the peo-

ple who lived here before * * *." The sheriff, without objection, took them and upon development of them, the pictures taken of and by Carolyn, defendant and Earlene were revealed, along with a lewd picture or pictures of another young girl. When these photographs were identified by Carolyn at the trial and offered in evidence by the State, defendant objected on grounds following: "The defendant has admitted that Exhibits 1, 2, 3 and 4 were taken, by whom they were taken, in whose presence they were taken, what the pictures depicted, and purported to show, who were in the pictures and the relative position of the parties. * * * The defendant has by admission conceded the facts essential to the allegation of the picture taking, and in effect takes that issue out of this case. It is the defendant's position that the court has abused his discretion in permitting these pictures to be displayed to the jury, since the only effect of the same would be to inflame the jury against this defendant, and that such acts are prejudicial to the substantial rights of this defendant as guaranteed by the Constitution of the State of Missouri and of the United States, and the laws and statutes connected thereunder." The evidence introduced in behalf of defendant's motion to suppress is totally insufficient to warrant exclusion of these photographs from evidence. Likewise, the objections made to their admission in evidence at the trial are without merit. The fact of the taking of these photographs comprises one of the acts of molestation charged in the information. The best proof of the fact is the photographs themselves. Moreover, they constitute more compelling proof of the grossly indecent indignities perpetrated upon Carolyn (too immature to appreciate the insult heaped upon her by their taking) than any verbal description can portray.

This brings us to defendant's assignments of error predicated upon cross-examination of defendant with reference to the molestation by him of female minors other than Carolyn and his arrest for one or more of

these episodes. The record shows that upon direct examination of defendant by his counsel he was asked and gave answers as follows:

"Q. Now I will ask you if prior to August 4, 1958, you had ever been arrested or in any kind of trouble? A. No, sir, I don't think so.

"Q. I will ask you, since August 4, 1958, to the present time, have you been in any trouble? A. No, sir."

Thereafter, on cross-examination, defendant was asked, "Now, Charles, have you posed with other young ladies?", to which defendant's counsel objected on the ground that the subject matter "was not gone into on direct examination. That is not the way to test whether or not this man had been in any trouble, had any prior conviction." The objection was sustained "as to the form of the question." Defendant was then interrogated as to whether or not he had been charged "with any other offense in connection with your activities with young ladies." Defendant objected to that question on grounds that "additional charges that might or could be pending against this young man, for which he has not been tried nor given preliminary hearing," were incompetent. The State insisted that such questions were offered in rebuttal of defendant's denial that he had been in any trouble either prior or subsequent to August 4, 1958. The objection was overruled. Thereafter, without further objection, defendant was interrogated with reference to sexual molestation of two young girls other than Carolyn. Following denial by him of any misconduct with the aforesaid two girls, defendant's counsel, out of the hearing of the jury, again objected "to the Prosecuting Attorney going into the question of other persons and other times unless he is prepared to produce the witnesses here at this time in order that I may have the right to cross-examine them. * * *." The objection was overruled.

Thereafter, defendant, upon further cross-examination by counsel for the State, stated that he could not remember whether he had posed in the nude with one of the aforesaid young girls or whether his wife took pictures of them lying upon a bed and that neither could he remember having similar immoral relationships with three other young girls. Thereafter, defendant was cross-examined with reference to a criminal charge presently pending against him in the Circuit Court of Jasper County involving sexual molestation of one of the girls hereinabove mentioned, whereupon defendant's counsel stated:

"Well, on behalf of the defendant may I say this for the record, that I do have knowledge myself and that it is admitted that there is presently pending a charge in connection with your question. I don't think he understands it fully, it has been so long ago, but I will admit that there had been a prior arrest.

"Mr. Tatum: You are making that admission on behalf of the defendant?

"Mr. Crandall: I certainly am."

When defendant's counsel, on direct examination, asked defendant whether prior or subsequent to August 4, 1958, (the date on which defendant committed the offense here under review) he had *ever been arrested or in any kind of trouble* and defendant said he had not, the trial court concluded, as this court must conclude, that the purpose of the interrogation was to lead the jury to believe that, with the exception of his admitted criminal misconduct of August 4, 1958, defendant, both prior and subsequent thereto, had been a law-abiding person. In so doing, defendant, of his own volition and without limitation as to time or trait of character involved, placed in issue his good character both prior and subsequent to the admitted lapse thereof on August 4, 1958, and then made himself his sole witness in that behalf.

We think it clear that under the circumstances here shown defendant sub-

jected himself to cross-examination as to any prior criminal misconduct or arrests for such misconduct for the purpose of testing in good faith, first, whether he truthfully was (as he had sought to induce the jury to believe) a person of good character (and, therefore, in law presumed less likely to commit a crime than a person not of good character) and, second, testing generally his trustworthiness and credibility as a witness in his own behalf. State v. Carroll, Mo., 188 S.W.2d 22, 23–24; State v. White, Mo.App., 313 S.W.2d 47, 54–55; and authorities in these cases cited. Nothing in the record makes it appear that the State did not in good faith pursue the path opened to it by defendant. The trial court is vested with a large measure of judicial discretion in determining the extent and range of cross-examination under the circumstances here shown. Cases, supra. We cannot say that the trial court abused that discretion in the instant case.

■ During the progress of the proceedings relating to defendant's "arrest" or "trouble" arising out of criminal molestation of other young girls, defendant's counsel objected to "the Prosecuting Attorney, William Myers, continually handing to the Assistant Prosecuting Attorney, Stewart Tatum, in the presence of the jury and which the jury can see, what purport to be statements made by other girls or other parties, alleging to be statements made by them, unless he is willing to produce those parties or show to the court that charges have been filed against this man based upon the information he has present, which he is displaying in the presence of the jury." The objection was overruled. Defendant's counsel continued: "Then I want to except to it, and ask that the jury be discharged because he is displaying what purports to be signed statements by other parties, which is intended to inflame the jury." The court overruled both the objection and the motion to discharge the jury. As stated, the motion for new trial alleges that counsel for the State engaged in such conduct. Of course,

however, neither the assertions made by counsel for defendant during the trial nor the allegations set forth in the motion for new trial prove themselves. Evidently, the trial court, who was in a position to observe the conduct of counsel for the State at the time of which defendant complains, did not observe any display of the statements nor believe that any conduct observed by the court carried with it the sinister motive or the prejudicial effect ascribed to it by counsel for defendant. In the absence of any proof or fact or circumstance tending to confirm the objections made by defendant, we cannot convict the trial court of the error assigned.

■ At the close of all of the evidence, defendant orally moved the court to direct the prosecuting attorney to file an information against the defendant as a criminal psychopath, as defined by § 202.700, on grounds the evidence disclosed that defendant was mentally ill and that he should be medically treated under the laws of this State by being sent to the State Hospital at Fulton. The court overruled the motion, holding that the court was without jurisdiction in this case to direct the prosecuting attorney to file such a proceeding. The court did not err in so ruling. Sections 202.710, 202.720; State ex rel. Kirks v. Allen, Mo.App., 255 S.W.2d 144, 148–149; State v. McDaniels, Mo.App., 307 S.W.2d 42, 46.

The amended information is in due form. Section 563.160; State v. King, Mo., 303 S.W.2d 930, 935. Defendant and his counsel were personally present throughout all stages of the trial and after-trial procedures; the verdict is responsive to the issues and the punishment assessed is within the limits prescribed by said Section 563.160. Defendant was granted due allocution and the judgment and sentence are in due form of law.

The judgment is affirmed.

All concur.