STATE of Missouri, Respondent,

v.

Freddie Lee GRANT, alias Freddie Lee King,
Appellant.

No. 50406.

Supreme Court of Missouri,

Division No. 2.

July 13, 1964.

**800** 

Thomas F. Eagleton, Atty. Gen., Jefferson City, John H. Denman, Asst. Atty. Gen., for respondent.

Rosenblum & Goldenhersh and Merle L. Silverstein, Clayton, for appellant.

STORCKMAN, Presiding Judge.

This is an appeal from an order and judgment overruling a motion under S.Ct. Rule 27.26, V.A.M.R. to vacate a conviction of forcible rape. In accordance with the habitual criminal act, the court assessed the punishment and fixed it at imprisonment for 99 years. The contentions raised are that the sentence and judgment were entered immediately after the verdict was returned thereby preventing the defendant from filing a valid motion for new trial and precluding him from preserving assignments of errors for review on appeal in violation of his rights under the constitutions of the United States and the State of Missouri, that he was not afforded allocution, and that entering judgment and sentence immediately after verdict deprived the appellant of the effective assistance of counsel in violation of his constitutional rights. The entire proceedings of the original trial are included in the transcript of the record on this appeal.

On November 3, 1960, Mrs. Hazel Christine Burton lived with her husband and two children, a seven-year-old boy and a one and one-half-year-old girl, in the country about a mile and a half south of Morehouse in New Madrid County. On that day Mr. Burton was away from home working and the boy was in school. About 11:30 a. m. a Negro man, later identified as the defendant, came to Mrs. Burton's home, asked where someone lived and when she could not supply the information he asked for a drink of water. Mrs. Burton got a glass of water from the house which the defendant drank and when she started back into the house with the glass he followed her and forced his way into the home. She escaped from him and ran outside calling for help. Mrs. Fred Williams, the closest neighbor, lived about a quarter of a mile away. The defendant caught her, grabbed her around the neck and dragged her back into the living room. He choked her until she lost consciousness momentarily and when she came to she was on a couch. He had removed his clothes and had torn hers off. He cursed and threatened her while he had sexual intercourse with her; he tried to keep a cloth over her face but she would pull it off. When he had finished the act, he demanded money. She refused to give him any and ran into the room where her

daughter was and closed the door. The defendant took three dollars off the television set and left. She watched him go across a field and when he was gone she hurried over to the Williams home where there was a telephone. Police officers in Sikeston and Morehouse were promptly called and notified of the assault.

The defendant was captured in a drainage ditch about a mile and a half from the Burton home about 45 minutes after the assault and was taken to the Williams home where Mrs. Burton identified him as her assailant but stated that he was wearing a striped coat when he was at her house. One of the officers asked about the coat and the defendant said he had thrown it away. The officers took him to the place he designated and the coat was recovered in a field in the vicinity of the drainage ditch where he was arrested. A couple of days later, Mrs. Burton again identified the defendant in a lineup of several Negroes in Sikeston, and at the trial further identified the defendant as the man who committed the assault on her.

Police officers and Mrs. Williams also testified on behalf of the state. The defendant, 25 years of age, testified in his own behalf. He admitted that he passed through the neighborhood where the Burtons lived on November 3, 1960, but denied that he went to the house and assaulted Mrs. Burton.

Since the defendant was charged as a habitual criminal, the state at the beginning of the trial, out of the presence of the jury, introduced evidence of four convictions. The first in 1955 was for burglary and larceny in New Madrid County for which the defendant was sentenced to two years in the penitentiary. The other three were in the City of St. Louis in 1957 of which two were for burglary and larceny and the other was for stealing $50 and over. The sentences for these three offenses totaled four and one-half years. The defendant was released from the Missouri penitentiary April 23, 1960. At the close of the state's case,

the court announced his finding that the defendant had been convicted of the prior felonies as charged. On cross-examination the defendant admitted the prior felonies and an additional conviction for stealing an automobile for which he served a term in a federal prison.

The jury returned a verdict finding the defendant guilty as charged in the information. After the jury was discharged, the defendant was granted thirty days to file a motion for new trial. The court then announced that he would take up the matter of sentencing the defendant and stated he would like to hear from the state's attorney and the defendant's attorney "as to what the punishment should be". Both counsel stated their views; the state asked for the death penalty. At the conclusion of the arguments, the court announced: "It will be the judgment of this Court that you be sentenced to ninety nine years in the Department of Correction." This occurrence will be discussed in further detail later. On July 11, 1962, within the thirty days allowed, the defendant by his trial counsel filed a motion for a new trial which the parties concede was never ruled on.

The next record entry in point of time is the filing of the motion to vacate on August 27, 1963, by the defendant's present counsel. On September 10, 1963, the motion to vacate was heard, submitted, and overruled by the court from which order and judgment the defendant filed his notice of appeal on September 13, 1963.

Two of the points presented by the defendant on this appeal are based on the proposition that the "sentence and judgment were entered immediately after the verdict was returned"; the other is that the "sentence and judgment were unlawful in that they were pronounced without affording appellant allocution." Therefore, it behooves us to determine at the outset the nature and legal effect of what occurred immediately after the verdict was returned and the jury discharged.

■ Section 556.280, RSMo 1959, V.A.M.S., known as the Habitual Criminal Act, deals with the assessment of the punishment in a case where the defendant has committed a prior felony; it provides in such case that the punishment shall be determined by the court rather than the jury. The statute, as amended in 1959, requires that evidence pertaining to the prior conviction shall be heard and determined by the trial judge out of the hearing of the jury prior to the submission of the case to the jury and that the court shall enter his findings thereon. In compliance with this provision, the judge, at the close of the state's case, announced his finding that the defendant had been convicted of prior felonies. Section 556.280 further provides that if the accused is found to have been convicted of a prior felony he "shall receive such punishment provided by law for the subsequent offense as the trial judge determines after the person has been convicted." The determination of the punishment must be made *after the conviction* and should be made before the motion for a new trial is prepared and filed in order to give defendant's counsel an opportunity to assign error with respect thereto in the motion. It was therefore in order for the court to determine the punishment after the jury had returned its verdict and been discharged.

■■ After the judge had granted defendant's counsel thirty days in which to file a motion for new trial, he stated: "Now Gentlemen, I would like to hear from the State's Attorney and as well as the Defendant's Attorney as to what the punishment should be in this case, and very frankly, it is a tremendous responsibility on me. I don't know whether I am prepared to do it today or not, but very frankly I have in mind is the death penalty. This has got to stop someday. Mr. Hunter, what are your recommendations?" Mr. Hunter, the prosecuting attorney, argued in favor of the death penalty. The court then called on Mr. Garner, counsel for the defendant, who spoke against the death penalty in

general and as applied to his client in particular. He also argued mitigating circumstances and in conclusion stated in effect that he would not have a thing to say against life imprisonment. The court responded and concluded the hearing in this fashion:

"The Court: My objection to that is, that he would be out of there soon. The only thing that can be said on behalf of your client is that he didn't kill anyone, and he probably could have. Do you have anything to say, King? Do you have anything to say?

"Defendant King: No, sir.

"The Court: Stand up. You have nothing to say?

"Defendant King: No, sir.

"The Court: Very well. It will be the judgment of this Court that you be sentenced to ninety nine years in the Department of Correction. Court is adjourned."

It appears that the court was undertaking to follow the requirements of the habitual criminal act. He started the discourse with a statement that he would like to hear from the attorneys as to "what the punishment should be in this case" and asked for recommendations. Inquiring if the defendant had anything to say and asking him to stand is the only thing savoring of allocution, but it is not sufficient to constitute a compliance with S.Ct. Rules 27.09 and 27.10, V.A.M.R., in that the defendant was not asked if he had any legal cause to show why judgment and sentence should not be pronounced against him, nor was the defendant heard on his motion for new trial. Sections 546.570 and 546.580, RSMo 1959, V.A.M.S.; State v. Hendrix, Mo., 310 S.W.2d 852, 856–857 [10–12]; State v. Turpin, 332 Mo. 1012, 61 S.W.2d 945, 949 [17–19]. The court in concluding the hearing spoke in the future tense and not the present. He said that it "will be the judgment of this Court", The proceedings were consistent with a determination of the punishment as

required by the habitual criminal act, but entirely at variance and inconsistent with the rendition of judgment on the jury's verdict and the imposition of sentence. The legal effect of the hearing is limited to a determination by the court of the punishment to be imposed as required by § 556.280.

■ Apart from the question of allocution, there is error apparent on the face of the record in that judgment purports to have been rendered and sentence imposed on the day the verdict was returned in spite of the fact that the defendant had the legal right under S.Ct. Rule 27.20 to file a motion for new trial within ten days after the return of the verdict, which time as shown by the same record had been extended to thirty days. A judgment so rendered would be illegal and ineffective to obstruct the defendant's right to file a valid motion for new trial or to appeal from the ruling thereon and a judgment duly rendered. State v. Withers, Mo., 347 S.W.2d 146, 148 [2]; State v. West, Mo., 270 S.W. 279, 281 [2]; State v. Keller, 304 Mo. 63, 263 S.W. 171, 173 [4]; State v. Taylor, 301 Mo. 432, 256 S.W. 1059, 1062 [6].

■ The motion for new trial, filed on July 11, 1962, is valid because it was properly filed within the time provided by law and the order of the court. Since the motion was not passed on within ninety days after it was filed, it is deemed denied by operation of law on October 9, 1962. S.Ct. Rule 27.20. The court did not thereafter render formal judgment and impose sentence; however, it did not lose its jurisdiction to do so. State v. Schierhoff, 103 Mo. 47, 15 S.W. 151, 152 [1]; State v. Turpin, 332 Mo. 1012, 61 S.W.2d 945, 948 [12].

■ The situation then is that it is incumbent on the trial court to pronounce formal judgment as provided by law and sentence the defendant in accordance with the determination made by the court pursuant to the habitual criminal act. In doing so, the defendant should be given credit for such time spent in jail and prison as may be just and proper under § 546.615. "After the rendition of final judgment", the defendant will have the right to take an appeal "not later than ten days after the judgment or order appealed from becomes final." S.Ct. Rules 28.03 and 82.04; § 547.070; State v. Bledsoe, Mo., 249 S.W.2d 457, 458 [2].

In connection with his first and third points, the defendant says that the purported entry of judgment immediately after the verdict was returned prevented the defendant from filing a valid motion for new trial, precluded him from preserving any errors for appeal, and deprived him of the effective assistance of counsel in violation of his constitutional rights. The defendant's complaint regarding the invalidity of the motion for new trial is disposed of by our holding that it is valid. Also we have held that in due course he will have an opportunity to appeal.

■ But the defendant says that the entire case should be remanded for a new trial because the record shows reversible errors violating his constitutional rights. In his briefs, the defendant refers on several occasions to the fact that the trial lasted only one day and intimates there was something sinister about it for that reason. The time of beginning and finishing are not shown, but it does appear from the record that only forty-five minutes were taken for lunch. There was a total of eight witnesses on the merits and the issues were limited. Counsel stayed with the issues and there was hardly any occasion for objection. No one seemed harried or hurried. There is no virtue ipso facto in a long trial or vice in a short one. The offense is alleged to have occurred on November 3, 1960; Mr. Silas E. Garner, trial counsel for the defendant, entered his appearance in the case on April 28, 1961, and the case was tried on June 13, 1962. So it may not be said that the defendant was rushed into a trial without sufficient opportunity to prepare. Many of counsel's assertions and conclusions are not supported by the record. It

has not been demonstrated that any of defendant's constitutional rights relating to a fair and impartial trial or due process of law have been violated.

Further the defendant contends if the cause is remanded he should be given leave to file a motion for new trial before a judgment is rendered because he was taken immediately to the penitentiary thereby hindering and impeding contact and consultation between the defendant and his counsel in the preparation of the motion filed. The defendant's trial counsel is known to the court to be an able and experienced attorney. He was appointed by this court as a special commissioner to hear testimony and report his findings of fact and conclusions of law in Pearcy v. Page, 356 Mo. 192, 201 S.W.2d 403. Mr. Garner resides and has his office in the City of St. Louis. Jefferson City is considerably closer and more accessible to a person living in the City of St. Louis than the county seat of New Madrid County where the defendant was in jail prior to trial. We also know that prison officials are quite cooperative in arranging interviews between attorneys and clients. The defendant's argument is entirely unsound. The contents of the motion filed, the manner in which the trial was conducted and the result indicate the defendant had the effective assistance of counsel. The evidence of defendant's guilt is quite convincing and it is apparent from the transcript that the trial court was inclined to assess the death penalty as he had the right to do. See State v. Wolfe, Mo., 343 S.W.2d 10, cert. den. 366 U.S. 953, 81 S.Ct. 1912, 6 L.Ed.2d 1246, cert. den. 368 U.S. 907, 82 S.Ct. 188, 7 L.Ed.2d 101; Wolfe v. Nash, D.C., 205 F.Supp. 219. The contention that the defendant should be given the opportunity to file another motion for new trial is without merit.

Accordingly the judgment and order herein appealed from is reversed and the cause is remanded with directions to the trial court to set aside the record or minute entry purporting to show the imposition of sentence and the rendition of judgment on June 13, 1962, as such entry appears from the last eleven lines on page five and the first fourteen lines on page six of the transcript of the record, and cause the defendant to be brought before the court (S.Ct. Rule 27.08 and § 546.560), and grant him allocution (S.Ct. Rule 27.09 and § 546.570), and, if no legal cause be shown, pronounce sentence in accordance with the verdict of the jury and the punishment determined and assessed by the court and render final judgment in the cause; and for such other and further proceedings as may be necessary and proper not inconsistent with this opinion.

All of the Judges concur.