**STATE of Missouri, Respondent,**

**v.**

**James Arthur ALLEN, Jr., Appellant.**

**No. 53067.**

Supreme Court of Missouri,
Division No. 2.

July 8, 1968.

Samuel A. Goldblatt, St. Louis, for appellant.

Norman H. Anderson, Atty. Gen., Jefferson City, F. Daley Abels, Sp. Asst. Atty. Gen., St. Louis, for respondent.

PER CURIAM:

Appellant was convicted of the commission of the crime of possession of marijuana (0.34 grams—which would be enough to make two or three cigarettes [or "reefers"] according to criminalist Cordell Brown of the St. Louis Police Department Laboratory). The jury assessed appellant's punishment at two years' imprisonment.

The point presented is whether there was prejudice to appellant requiring a new trial when the trial court first permitted an arresting police officer, over objection, to testify as to appellant's conduct and what was said by him at the time of the arrest. Upon further motion, as hereinafter set forth and upon request of counsel, the objection was sustained and the jury was instructed to disregard the testimony.

The case arose in these circumstances: On February 7, 1967, about 10:30 p. m., officers Frank Boehm and Jim Fieldson were in their police car at the corner of Euclid and Easton in St. Louis. Four or five persons were creating a disturbance a short distance from the corner, and the officers got out to investigate. Appellant told them he wanted to get away from there—that he was worried about being beaten up by the others. Appellant got into the back seat of the car, and a block or two from the scene appellant told the officers he wanted them to let him out, "he wanted to go back and get his evens." The

officers attempted "to take it easy" with appellant but he started screaming, saying he wanted to go back and kill somebody. Boehm told him he was under arrest (Fieldson testified appellant was not arrested then), and that they were going to take him to the police station "primarily, to cool him off."

When they went into the Eight District Police Station, and were walking toward the detective room, appellant removed a tinfoil packet from his clothing and threw it toward a wastebasket in an anteroom. It fell upon the floor and was retrieved by Fieldson. The packet proved to contain the marijuana in question. Fieldson testified as to what then took place, of which appellant complains:

"Q. * * * After you seized this packet, off the floor, and examined it, what, if anything, did the defendant say?

"A. After that the defendant became very nervous, enraged. He began hollering and screaming he was a Black Moslem, we had no right to lock him up.

"MR. GOLDBLATT: I object to that, if your Honor please. It is immaterial to any issues in this case. I ask the jury be instructed to disregard it.

"THE COURT: Overruled.

"THE WITNESS: He was a Black Moslem, we had no right to arrest him, and he felt he didn't do anything wrong.

"Q. (By Mr. Hutnick) Did he say anything else at that time?

"A. There were several curse words he used at that time.

"Q. At the time he said this where was he?

"A. In front of the booking desk.

"Q. What, if anything, was he doing in front of the booking desk?

"A. Sitting on the floor.

"MR. GOLDBLATT: May I approach the bench, your Honor?

"THE COURT: No.

"Q. (By Mr. Hutnick) Officer, Fieldson, was this the extent of your participation in this matter?

"A. I don't understand exactly.

"Q. At this point did that end your investigation regarding that particular arrest?

"A. Yes.

"MR. HUTNICK: No further questions of this witness at this time, your Honor.

"Thereupon the following proceedings were had without the hearing of the jury:

"MR. GOLDBLATT: If the Court please, at this time I would like to object again to Mr. Hutnick asking the police officer and the police officer testifying my client said he was a member of the Black Moslems, because I think it is highly prejudicial, and intending to inflame this jury in such a manner they could not be fair and just to my client. At this time I would have to ask the Court to tell the jury to disregard it, about the Black Moslems, because it was done for the purpose of solely inflaming and prejudicing this jury.

"THE COURT: I will sustain the objection.

"Thereupon the following proceedings were had within the hearing of the jury:

"THE COURT: Members of the jury, you will disregard the statement made by the Officer in regard to membership in the Black Moslem."

Appellant testified that he did not belong to the Black Muslims.

■ Assuming that the testimony was in fact objectionable because it did not bear upon the guilt of appellant of the offense charged (see generally, 22A C.J.S.

Criminal Law § 628, p. 472 et seq.), appellant was granted all the relief he requested when the matter was reconsidered by the Court. The situation is comparable to that in State v. Thomas, Mo., 360 S.W.2d 694, 699. Appellant here made no motion for mistrial, but let the matter stand on the sustaining of his objection and the instruction to the jury to disregard the testimony. See also State v. Jefferson, Mo., 426 S.W.2d 41, 43. Appellant may not now complain, and his point is overruled.

The verdict was returned on May 9, 1967. On that same day the Court informed appellant of the verdict and sentenced him to two years in the Department of Corrections. No allocution is shown in that part of the transcript, although the formal judgment entry recites the granting of allocution. A motion for new trial was filed on May 18, 1967, and was overruled on May 22, 1967. On the latter date there was no resentencing nor was there any thereafter.

The entry of a judgment and sentence immediately after verdict is most irregular, unless defendant expressly waives his right to file a motion for a new trial. In State v. Grant, Mo., 380 S.W.2d 799, the Court held specifically under similar circumstances, that such a mode of procedure was erroneous regardless of allocution, and that the motion for new trial was valid, but that there was no valid judgment or sentence. The judgment there was reversed on that ground, and the cause was remanded with directions to set aside the erroneous imposition of judgment and sentence, to bring defendant before the trial court and grant him allocution, and then, if no legal cause be shown, to pronounce sentence. In State v. Watson, Mo., 400 S.W.2d 129, the Court referred to the Grant case, supra, as holding that a judgment imposing sentence prior to the filing of a motion for new trial "would be illegal and ineffective." We decline, as did the Court in Grant, supra, to follow the procedure adopted in State v. Withers, Mo., 347 S.W.2d 146, where the Court expressly held that such action was error, but elected to treat the judgment as "becoming effective upon the overruling of defendant's motion for new trial." In other words, we shall not overlook, and inferentially approve, an error which has rendered the judgment "illegal and ineffective."

We find no error on the merits and we affirm the case thereon. We reverse the judgment, however, with directions to the trial court to have defendant brought before it, to grant him allocution, and thereupon, if no legal cause be shown, to pronounce sentence upon him in accordance with the verdict and to render final judgment thereon.