**STATE of Missouri, Respondent,**

v.

**Sammy Dee VINCENT, Appellant.**

**Sammy Dee VINCENT, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 15601, 16402.

Missouri Court of Appeals,
Southern District,
Division One.

March 14, 1990.

Melinda K. Pendergraph, Columbia, for appellant.

William L. Webster, Atty. Gen., Frank A. Jung, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Judge.

Sammy Dee Vincent (hereafter referred to as "appellant") was charged with and convicted of the offense of second degree murder. § 565.021.1.[1] He was sentenced as a prior and persistent offender. §§ 558.016 and 557.036.4. Appellant was sentenced to life imprisonment. Following sentencing, appellant filed a Rule 29.15 motion for post-conviction relief. Counsel was appointed and an amended motion filed. Appellant's Rule 29.15 post-conviction motion was denied after evidentiary hearing. Appellant appeals his conviction in the criminal case and appeals the denial of his Rule 29.15 post-conviction motion. The two appeals are consolidated before this court. Rule 29.15(*l*).

Appellant presents four points in the appeal of his conviction for second degree murder and one point in the appeal of the denial of his Rule 29.15 post-conviction motion. He contends, with respect to the criminal case, that (1) the trial court erred by permitting a witness to testify that the victim in the murder case (Rosemary Sisk) told the witness that she was afraid of appellant and that appellant had threatened to kill her; (2) the trial court erred by permitting a witness (Dr. Ron Hill) to state his opinion as to the path the bullet traveled through the body of the victim; (3) the trial court erred in denying his motion for acquittal because the state failed to elicit evidence that proved that the victim died or that the victim died as a result of a gunshot wound inflicted by appellant; and (4) the trial court erred by refusing appellant's tendered jury instructions on voluntary manslaughter as a lesser included offense of second degree murder. Appellant further contends, with respect to the Rule 29.15 post-conviction motion, that the hearing court erred in denying his claim that he did not receive effective assistance of counsel in the trial of his criminal case.

---

1. Unless otherwise indicated, references to stat- utes are to RSMo Cum.Supp.1984.

The evidence in the criminal case is viewed, for purposes of appeal, in the light most favorable to the verdict. Consideration of the appeal of the denial of the Rule 29.15 post-conviction motion is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(j).

Rosemary and appellant lived together. Rosemary's son, Darren, age 16, lived in the same household. The events which led to the criminal charge occurred the evening of March 10, 1986, and led to the death of Rosemary in the early morning hours of March 11, 1986.

Rosemary had lived with appellant for a little more than one year. She and Darren had moved out about a month before this incident and returned two weeks later.

On the evening of March 10, 1986, Darren was home. Appellant and Rosemary had been out. They were in separate vehicles; however, they had been together during the course of the evening. Both had been drinking. Rosemary was the first to return home. She arrived there about 9:00 p.m. or 9:30 p.m., but left again. Appellant came home and shortly thereafter, Rosemary returned. Rosemary and appellant went to bed. They quarreled and Rosemary told appellant that she had talked with a friend from Alabama, a Jack Matthews, earlier that day and had agreed to leave with him and go to Alabama.

Appellant got up, dressed, and went out the door. He left the house, went through a gate, then decided to go back into the house to get a pistol that was there. When appellant returned to the house, Rosemary continued quarreling. Appellant got the pistol and again went out the back of the house. Rosemary followed him to the outside. Appellant continued through a gate, closed it, wheeled around and fired the pistol he had retrieved from the house. Appellant continued walking toward a nearby truck. He heard Rosemary say, "Sam, I'm hit." Appellant looked back toward the house to a porch where Rosemary had been standing. He did not see her. He walked back toward the porch and saw her sitting. He saw that she had been struck with the bullet.

Darren came to the door. Appellant told Darren to get dressed and come with him. Appellant carried Rosemary to his truck. Darren got in the truck with appellant and Rosemary. They drove to the Bernie, Missouri, police station. An ambulance was called and the ambulance transferred Rosemary to a hospital.

Rosemary was treated at a hospital at Dexter, Missouri, by Dr. Ronald Hill. Dr. Hill performed surgery on Rosemary during the early morning of March 11. He began the surgery about 2:30 a.m. and finished about 4:00 a.m. The surgery was directed to a gunshot wound through Rosemary's abdomen. Rosemary's liver, pancreas, spleen and kidney were affected. Dr. Hill removed part of Rosemary's liver, part of the pancreas and spleen. He also removed a kidney.

Appellant was arrested the evening of March 10. On the morning of March 11, a deputy sheriff went to the jail and told him that Rosemary Sisk was dead.

Appellant's first allegation of error is directed to the trial testimony of witness Bert Taylor, Rosemary's brother.

In the prosecuting attorney's opening statement, the jury was told that Bert Taylor saw Rosemary the morning of March 10 and talked with her. The jury was further told that Rosemary was living with appellant and that Rosemary had told Taylor that she was afraid of appellant, that appellant was jealous and had threatened to kill her. At the conclusion of the opening statements, the prosecuting attorney called Bert Taylor as the state's first witness. At that time, appellant's trial attorney advised the court that he wished to pose an objection to Taylor's testimony. A conference was held outside the presence of the jury. Appellant's counsel told the court that he expected Taylor to testify that Taylor saw Rosemary on March 10, 1986, and that Rosemary had told Taylor that she was afraid appellant would harm her or afraid that he would kill her. Appellant's attorney objected to that testimony being offered on the basis of hearsay and on other

constitutional grounds. That objection was denied. Thereafter, the state called Bert Taylor as its first witness.

During the course of Taylor's testimony, the following occurred:

Q. On the morning of the 10th of March where were you?

A. I was at my other sister's house, Marie Scott.

Q. On that morning did you have occasion to see the decedent Mrs. Sisk?

A. She came out about 9:30 that morning.

Q. Did you have a talk?

A. Yes, sir.

Q. What did you have a talk about?

A. Well, I had been told by my other sister that her and Sam had been having trouble—

[PUBLIC DEFENDER]: Object, Your Honor, hearsay.

THE COURT: Sustained. Just answer the question.

Q. What did you talk about?

A. I asked her, I said, "Are you—I heard you have been having trouble," and she said, "yes,"—

[PUBLIC DEFENDER]: Object, Your Honor, hearsay.

THE COURT: Sustained. He didn't ask you what you heard. Go ahead.

A. She said, "yes," and I asked her, "Have you about got your problems straightened out now?" I was concerned about her because I saw her stuff in the garage and she said, "no, not really." She said, "our problem, Bert, is Sam is crazy jealous."

[PUBLIC DEFENDER]: Judge, I would object to this testimony based upon the motion that I made in chambers.

THE COURT: I can't hear you.

[PUBLIC DEFENDER]: I would object to this testimony based on the motion I made in chambers previsouly [sic] and I would like to incorporate all the grounds that I stated in that motion as being hearsay and the case I cited right now for the court.

THE COURT: Overruled. You may proceed.

Q. Mr. Taylor, evidently—

A. She told me that their problem was Sam was crazy jealous. She said, "Bert, he has threatened to kill me." And that night he did.

[PUBLIC DEFENDER]: Object, Your Honor. Ask that the last part be stricken from the record.

THE COURT: That is sustained. You are directed to ignore the last remark he made. It was not responsive to the question and the jury will disregard it. You may proceed.

Appellant complains that error was committed "in overruling appellant's objections to hearsay testimony that the victim, Rosemary Sisk, had been afraid of appellant and that appellant had threatened to kill her...." It is unclear as to exactly what this allegation of error is directed.

■ In the matter addressed by the trial court, immediately following opening statements, appellant's counsel complained about the anticipated testimony of Taylor. He posed his complaint as an objection, saying, "Judge, I would like to object to that as being hearsay...." The court's ruling in response to the "objection" was "defendant's motion will be denied." In the course of Taylor's testimony, appellant's attorney objected to a part of the testimony "based upon the motion I made in chambers." Thus, it appears that appellant's trial counsel intended for the "objection" he made at the close of opening statements to be, in effect, a motion in limine. It appears, likewise, that the court treated the "objection" as a motion in limine. If appellant's first allegation of error is directed to the proceedings held outside the presence of the jury prior to Mr. Taylor's testimony and after opening statements, that allegation of error fails. The denial of a motion in limine preserves nothing for appeal. *State v. Mason*, 650 S.W.2d 15, 17 (Mo.App.1983); *State v. Johnson*, 586 S.W.2d 437, 440 (Mo.App.1979).

■ That allegation of error also fails if it is intended to be directed to Taylor's

testimony as quoted above. There, Taylor testified:

She told me that their problem was Sam was crazy jealous. She said, "Bert, he has threatened to kill me." And that night he did.

Immediately following this testimony, the following colloquy occurred:

[PUBLIC DEFENDER]: Object, Your Honor. Ask that the last part be stricken from the record.

THE COURT: That is sustained. You are directed to ignore the last remark he made. It was not responsive to the question and the jury will disregard it. You may proceed.

The objection was sustained. Appellant's attorney asked that "the last part be stricken from the record." Thereupon, the court directed the jury "to ignore the last remark." The court further advised the jury, "It was not responsive to the question and the jury will disregard it."

The court granted the relief requested by appellant's trial counsel. Appellant received the relief that was requested. He cannot now be heard to complain further. *State v. Allen,* 429 S.W.2d 697, 698–99 (Mo.1968); *State v. Granberry,* 530 S.W.2d 714, 727 (Mo.App.1975); *State v. Cissna,* 510 S.W.2d 780, 781 (Mo.App.1974).

■ Appellant next complains that the trial court erred by permitting Dr. Ronald Hill to state his opinion as to the path the bullet followed in passing through Rosemary's body. Appellant complains that Dr. Hill "was not shown to have any experience with the subject matter."

Dr. Hill is a medical doctor, licensed to practice in Missouri. He was on the medical staff at Dexter Memorial Hospital, the hospital to which Rosemary was taken the evening of March 10, 1986. He performed surgery on Rosemary. He identified the wound on Rosemary's body as "a gunshot wound through the abdomen."

Dr. Hill was asked, "Do you have an opinion, within a reasonable medical certainty, as to whether or not the bullet changed course at any time during the time it went through the body?" Appellant's

trial counsel objected "as to Dr. Hill's qualifications as an expert to give that opinion and state that it violates the Defendant's 4th and 5th and 14th amendment rights to due process of law." The attorney further objected that Dr. Hill was not qualified as an expert. The court overruled the objection.

The doctor was then asked his opinion. His opinion was "that the bullet went in a fairly straight line, probably a very straight line from the entrance to exit wound." Dr. Hill had previously identified the organs that were affected by the gunshot wound suffered by Rosemary. He had been asked whether there were any bones or obstructions, other than soft organs, along the path the bullet followed through Rosemary's body. He responded, "Just soft tissue and organs and it involved no boney [sic] structures."

Dr. Hill is a licensed medical doctor. He is a medical expert. The question asked was limited to his area of expertise, viz., "within a reasonable medical certainty." Dr. Hill had observed, during the course of the surgery he performed, what internal organs were damaged. He had observed that the injury involved no bony structures. Dr. Hill's medical knowledge and personal observations were such that he had expertise that could aid the trier of fact. The trial court concluded that he was an expert within the area about which he was asked. *State v. Mallett,* 732 S.W.2d 527, 537 (Mo. banc), *cert. denied* 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987); *State v. Garrett,* 682 S.W.2d 153, 155 (Mo.App.1984). The qualification of an expert witness is a matter that rests primarily in the sound discretion of the trial court. *State v. Mallett, supra; State v. Jones,* 594 S.W.2d 932, 938 (Mo.1980). The trial court did not abuse that discretion by determining that Dr. Hill was an expert.

Appellant next contends that the trial court committed error in overruling appellant's Motion for Judgment of Acquittal. Appellant claims that the state failed to prove the corpus delicti for second degree murder for the reason that no evidence was adduced that Rosemary died, or that she

died as a result of a gunshot wound inflicted by appellant.

■ The corpus delicti in a homicide case consists of (1) a person's death, and (2) the criminal agency of another. *State v. Applegate*, 668 S.W.2d 624, 628 (Mo.App. 1984).

Appellant concedes that the evidence at trial established that he shot Rosemary in the stomach, that Rosemary became unconscious, and that Rosemary underwent surgery. Appellant argues, however, that the state adduced no evidence of an autopsy, that no death certificate was produced, nor was any other competent evidence produced that Rosemary died. He further argues that even if death were established, there was no showing that Rosemary died as a result of the gunshot wound which appellant admittedly caused.[2]

■ A careful review of the transcript from the criminal trial discloses, as claimed by appellant, that no evidence of any autopsy was presented and that no death certificate was offered in evidence. However, all elements of a homicide case, including corpus delicti, may be proved circumstantially. *State v. Meidle*, 202 S.W.2d 79, 81 (Mo. 1947); *State v. Morris*, 564 S.W.2d 303, 309 (Mo.App.1978); *State v. Morrow*, 541 S.W.2d 738, 742 (Mo.App.1976).

■ Two photographs were admitted into evidence, state's exhibits 5 and 6, that revealed the entrance and exit wounds of the bullet which struck Rosemary. They are color photographs. Those photographs also reveal what appear to be long incisions across the abdomen, both vertically (state's exhibit 5) and horizontally (state's exhibit 6). The coloration of the skin shown in state's exhibit 6 discloses a pallor of yellowish and purple splotches which a jury could relate to lifelessness.[3] The body in state's exhibit 6 is held and positioned by

persons whose faces are not shown. The manner in which the body is held, apparently for purposes of taking the photograph, is such that viewers could believe the body to be lifeless.

There are at least four references in the transcript from the criminal trial that indicate Rosemary was dead. The prosecuting attorney asked witness Bert Taylor, the brother of Rosemary, the question, "On the morning [referring to March 10, 1986], did you have occasion to see *the decedent* Mrs. Sisk?" (Emphasis added). A deputy sheriff testified about circumstances on March 11 when he saw appellant: "I went to the jail to tell him that *Rosemary Sisk had expired.*" (Emphasis added). The videotape recording of appellant's statement (state's exhibit 9), which was played to the jury, began:

"*Q.* The date is March 11th, 1986. It is now 9:53 A.M. and we are at the Stoddard County Sheriff's Department in Bloomfield, Missouri. Present in the room are myself Jr. O'Daniels, Deputy Sheriff, Stoddard County Sheriff's Department, Sammy D. Vincent, and Deputy Sheriff Ricky McLean. And we are here in reference to a shooting that occurred last night, huh, at which Rosemary Zisk—

A. Sisk.

Q. Zisk.

A. Sisk.

Q. —huh, was shot fatally wounded. Huh, now, Sammy, certain things I need to tell you is the Miranda Warning. You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to the presence of an attorney. If you cannot afford to hire an attorney one will be afforded to represent you if you wish. You have the right to terminate this interview at any time, not an-

---

**2.** In his opening statement, the prosecuting attorney stated that Dr. Hill would testify "that Rosemary died at the Dexter Memorial Hospital after 6:00 o'clock P.M. on March 10th, 1986." However, when Dr. Hill testified he was not asked about the outcome of his treatment of Rosemary. Dr. Hill made no statement, in the course of his testimony, regarding her death.

**3.** The record does not reveal when these photographs were taken or whether they were taken at the same time. Part of a window is visible in the background of state's exhibit 6 which has a brightly colored curtain. The setting is such that persons viewing the photograph might believe the location to be some place other than a hospital surgical suite.

swer my questions. You understand all that?

A. (Nods head)

Lastly, a deputy sheriff testified that he had occasion to measure the height of the bullet entrance and exit wounds on Rosemary's body. He was asked where that was done and responded, "At the funeral home in Malden."

Appellant gave statements that were in evidence in which he admitted firing a shot which wounded Rosemary. He admitted that the pistol he fired was "a .38 special." Dr. Hill testified that the wound shown in state's exhibits 5 and 6, the photographs discussed above, was a gunshot wound through the abdomen; that it affected Rosemary's liver, pancreas, spleen and kidney; and that he removed half of the pancreas, spleen, part of the liver and a kidney. The shooting occurred the evening of March 10, 1986. There was evidence that on the next day, March 11, Rosemary was dead.

The jury heard and saw sufficient circumstantial evidence to permit them to find, beyond a reasonable doubt, that appellant fired a .38 caliber pistol, the bullet from which struck Rosemary producing a stomach wound which resulted in her death. The state established the required corpus delicti. The trial court correctly overruled appellant's Motion for Judgment of Acquittal.

■ Appellant contends, as his last allegation of error directed to the criminal trial, that the trial court erred by refusing to instruct the jury on voluntary manslaughter as a lesser included offense of second degree murder. In order for the offense of voluntary manslaughter to be committed, one must cause the death of another person under circumstances that would constitute conventional murder in the second degree, except that the offender must have caused the death under the influence of sudden passion arising from adequate cause or knowingly assist another in the commission of self-murder. §§ 556.-046, RSMo 1978, and 565.023.1.

The only evidence of the events involved in the actual shooting were two statements given by appellant, a tape-recorded statement (state's exhibit 18) and a video-taped statement (state's exhibit 19). Those statements refute any contention that appellant "caused the death under the influence of sudden passion arising from adequate cause." § 565.023.1(1). To the contrary, appellant testified that he had gotten out of bed, dressed, and gone outside after Rosemary had told him that she planned to leave him. He returned to get his pistol because he was concerned that Rosemary would take it when she moved away. He left the house a second time. Rosemary followed. She was standing on an outside back porch. Appellant turned and fired the pistol without aiming. He stated in the video-taped statement: "I just meant to shoot towards the house and scare her where she would go back in and I would leave and get out of there. That's all I was wanting to do."

The question was asked and appellant's answer given:

Q. When you shot in that direction your intention was to scare her?

A. That's all I wanted to do was just scare her where she would go back in and leave me alone.

The evidence did not support an instruction on voluntary manslaughter. Appellant did not meet his burden of injecting the issue of influence of sudden passion arising from adequate cause. § 565.023.2. There was no showing of provocation that would have rendered appellant's mind incapable of reflection and obscured his capacity to reason to such an extent that would indicate an absence of malice and premeditation on his part. *State v. Harris*, 781 S.W.2d 137, 140 (Mo.App.1989). There was no evidence which would provide a basis to acquit appellant of murder in the second degree and convict him of a lesser offense of voluntary manslaughter. *Id.* From the evidence presented, movant either fired the shot which struck Rosemary with intent to cause serious physical injury, thereby committing murder in the second degree, as the jury found; or movant recklessly fired the shot resulting in involuntary manslaughter. The trial court properly refused to instruct

the jury on voluntary manslaughter as a lesser included offense of murder in the second degree.

Appellant's fifth point on appeal is directed to his Rule 29.15 post-conviction motion. Appellant complains that he received ineffective assistance of counsel from the attorney who represented him in the trial of his criminal case. He complains that his trial attorney made an inadequate investigation.

Appellant's particular complaint is directed to the bullet hole at the crime scene. The bullet had been dug out of the wall by a deputy sheriff using a pocket knife. Appellant complains that his trial attorney should have presented testimony from "an expert from a crime laboratory about the proper method for removing bullets and about gun residue." He claims this was necessary "to repudiate the state's evidence of the angle at which the bullet was fired, and to establish that appellant fired the gun from his holster and not at point-blank range."

The state suggests that appellant's amended Rule 29.15 motion was filed out of time; that this point was raised in that amended motion; and, therefore, that the issue is not properly before this court. The state relies on *Batson v. State*, 774 S.W.2d 882 (Mo.App.1989), *Burch v. State*, 778 S.W.2d 731 (Mo.App.1989), and *Cash v. State*, 778 S.W.2d 779 (Mo.App.1989).

▆▆▆▆ The state is correct in its assertion that an amended motion filed out of time is ineffective and that all grounds for relief not timely raised are waived. However, without addressing the question of timeliness of appellant's amended Rule 29.15 motion in this case, it is noted that appellant's *pro se* motion, which was timely filed, alleges, although unartfully, that appellant received ineffective assistance of counsel. The *pro se* motion criticizes trial counsel "for not challenging" and "for not introducing evidence in [appellant's] behalf." Appellant complains in his statement of fact in the *pro se* motion that a deputy sheriff removed the bullet in question with a pocket knife; that a crime laboratory could show the gun was "shot in the

holster;" and that gun residue or "powder burns" would show things which appellant deems would have been beneficial to him. Those allegations in the *pro se* motion are sufficient to permit this court to review the point now presented on appeal.

The court that conducted the evidentiary hearing on appellant's Rule 29.15 post-conviction motion made the following finding:

> As to defendant's objections to the investigation by defendant's attorney, the defendant failed to point to any specific investigation which would have provided a viable defense or changed results of trial, relying only on vague allegation of incompetence unsupported by specific allegation.

As previously noted, appellate review of a Rule 29.15 post-conviction motion is limited to a determination of whether the findings and conclusions of the hearing court are clearly erroneous. Rule 29.15(j). The findings, conclusion, and judgment of a court that heard and determined a post-conviction motion are clearly erroneous if a review of the entire record leaves the appellate court with a definite and firm impression that a mistake has been made. *State v. Fraction*, 782 S.W.2d 764, 769 (Mo.App.1989); *Moton v. State*, 772 S.W.2d 689, 691 (Mo.App.1989).

▆▆▆▆ In order for a movant in a post-conviction motion to establish ineffective assistance of counsel, he must demonstrate that: (1) counsel's performance was unreasonable under prevailing professional norms, and (2) defendant was thereby prejudiced. *Driscoll v. State*, 767 S.W.2d 5, 7 (Mo. banc 1989); *Sanders v. State*, 738 S.W.2d 856, 857–58 (Mo. banc 1987). No evidence was presented at the evidentiary hearing regarding any proper method for removing bullets nor about gun residue. Appellant's allegations in his post-conviction motion are not self-proving. He had the burden of proving the grounds he asserted for relief. Rule 29.15(h).

A review of the entire record in appellant's case does not leave this court with the requisite impression that a mistake has been made. The findings and conclusion of

the court that conducted the evidentiary hearing on appellant's Rule 29.15 post-conviction motion are not clearly erroneous. Each judgment is affirmed.

CROW, P.J., and PREWITT, J., concur.