STATE of Missouri, Respondent,

v.

Glendel W. THOMAS, Appellant.

No. 48806.

Supreme Court of Missouri,

Division No. 2.

Sept. 10, 1962.

Motion for Rehearing or to Transfer to Court En Banc Denied Oct. 8, 1962.

William B. Spaun, Hannibal, for appellant.

Thomas F. Eagleton, Atty. Gen., James W. Steele, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

EAGER, Presiding Judge.

Defendant was charged by information, supposedly in two counts, with second degree burglary and stealing. Further reference will be made to the information later. The jury found defendant guilty of both burglary and stealing and fixed his punishment at imprisonment for two years on each charge. After an unsuccessful motion for a new trial, defendant appealed. It will not be necessary to relate the facts in any great detail, since no point is made in defendant's brief on the sufficiency of the evidence. The case was tried in Marion County on change of venue from Ralls County.

Defendant and two companions were arrested in Hannibal in defendant's 1955 Ford panel truck at 2:15 a. m. on August 29, 1960. They were taken to jail and defendant was booked as a burglary suspect. He then had $79.27 in his possession which, by his testimony, he accounted for. He testified that the title to the vehicle was carried in his wife's maiden name, because of certain complications which are immaterial here. The evidence showed that one of defendant's companions had a record of several arrests in Hannibal. The truck was parked by the police on the street about 12 feet south of the main front door of the police station and in a well lighted area, but in a position where it was not constantly observed by the one officer on duty inside at night. It was not locked and could not be locked. It was not searched at the time.

At approximately 7:30 a. m. on the same morning it was discovered that both the

office building and warehouse (a quonset hut type metal building) of the Ralls County Electric Co-Operative just south of New London had been broken into. The lock on the back door of the office building had been forced open by prying with some type of flat instrument, leaving distinct marks on the door facing, and a window glass in the warehouse had been broken so that the window might be unlocked and opened. These were separate buildings, about 50 feet apart. In the office the combination had been beaten from the vault door, and that door had been opened; a hole had been partially beaten or dug through a plaster and block wall of the vault. Papers in the vault were strewn on the floor and approximately $60 in money was missing. From the warehouse several tools were missing, including a one-quarter inch Thor electric drill, a pipe wrench, a sledge hammer and a tire tool. The drill was valued at $10.

A State Patrolman who investigated the burglary testified that he found three "paths" beaten down through a bean field back of the Co-Op premises and leading to a gravel road; also, that at the road he found a place where a car had entered the field through beans and high weeds and had turned around. There was also evidence that various weeds were found on or under the bumpers and fenders and on the underside of defendant's truck, and that there were greenish stains, like weed stains, on defendant's socks. Defendant admittedly gave written permission for the search of the truck and the Chief of Police and State Trooper searched it at about 10:00 a. m. the same morning. They found in it, and marked, an electric drill (one-quarter inch Thor), a sledge hammer, an iron bar (apparently a car axle), a tire tool, a screw driver, a cold chisel, a two-cell rubber flashlight and three pairs of assorted gloves. All of these items were offered and received in evidence. The drill so produced was positively identified as the one taken from the warehouse; the sledge was said to be "similar" to the one which was missing. There was gray paint on the end of the iron bar and at points on the head of the sledge which, upon laboratory examination, was said to be "similar" to the gray paint in the office and on the vault.

The defendant testified that the tools found in the truck were his (except the electric drill), and that he had used the iron bar and sledge in tearing down a building and parts of another in Illinois shortly before August 29, 1960; also, that these buildings were painted a gray color, similar to the paint found on these tools. He further testified that he owned an electric drill of a different make, longer and more shiny, and that it was in the truck when he was arrested, but that the one produced at the trial was not his. He denied even being in the vicinity of the crime, and testified to the supposed purpose or purposes in driving to Quincy, thence to Canton and to Hannibal on the night and early morning in question; the latter testimony, convincing or otherwise, is immaterial here.

■ Defendant's first point here is that the information is defective. It sought, in two counts (although only the second was described as a count) to charge defendant (1) with stealing, and (2) with burglary, presumably in the second degree under Section 560.070, RSMo 1959, V.A.M.S.[1] Counsel has furnished us with rather slight explanation of his attack on the information, but we would consider it independently under Rule 28.02, V.A.M.R. We have determined that the first count states the essentials of a charge of stealing over $50 under §§ 560.156 and 560.161, independent of the burglary charge. It alleges that defendant did, with "criminal intent, wilfully, * * * unlawfully * * * feloniously, * * * steal and appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner by taking, obtaining, transferring and retaining possession of property belonging to the

---

I. To which revision all statutory references will be made.

Ralls County Electric Cooperative having the following values: Cash money $60.00, 1/2" Electric Thor Drill, $10.00." Such property was certainly within the definition stated in § 560.156(1), and the stealing of that property subjected the defendant to imprisonment in the penitentiary as for a felony under § 560.161(2).

We find the count alleging burglary to be insufficient. It is, in its entirety, as follows: "COUNT 2. did then and there, with specific criminal intent, wilfully, intentionally, unlawfully, deliberately, feloniously, and on purpose break and enter into two separate buildings owned by and used for storage and office space by the Ralls County Electric Cooperative with intent to steal therefrom, contrary to the form of statute in such cases made and provided, and against the peace and dignity of the State of Missouri." Even giving to the State the benefit of certain formal allegations appearing at the beginning of the first count, it is immediately apparent that the second count omits entirely the requirement of § 560.070 that there must be the breaking and entering of a building, etc. (not being such as is declared to be first degree burglary, § 560.040), "in which there shall be at the time any human being or any goods, wares, merchandise or other valuable thing kept or deposited, with the intent to steal * *." Sections 560.045–560.065 deal with second degree burglary of a dwelling house, with which we are not concerned here. It was not claimed here that "any human being" was in either of the buildings in question at the time of the breaking; it was essential therefore to allege as to any such building, either in so many words or in substance, that "goods, wares, merchandise or other valuable thing" were "kept or deposited therein." State v. Moten, 276 Mo. 354, 207 S.W. 768. The information in that case was considerably better than ours, for it was alleged that defendant stole certain described property "in the said store, shop and building then and there found"; still, the information was held fatally defective. We do not need to go that far here. There is no allegation here in either count that the $60 or the electric drill, or any other goods, wares, merchandise or property was kept or deposited in either of the buildings in question, or even that the stealing was from either of the buildings. We are dealing with a statutory crime and, while we are always loath to reverse upon points which may appear to be technical or nonsubstantive, we are duty bound to do so where a charge omits an essential element of the statutory definition of a crime. The omission here was of an element which, in effect, fixed the *type of building* which might be so burglarized; and we may not extend the scope of the statute. Respondent says that we may look to the first count (essentially such but not so numbered or described) which "stated that certain items and money were taken from buildings of the REA, thus adequately informing defendant of the charges." We have looked and there is no such allegation, even if we should consider that count as supplementing Count Two, contrary to the injunctions of State v. Moten, supra, which hold that each charge must be separate and complete within itself, "barring mere formal allegations." In the first count, as already indicated, it was merely alleged (in appropriate language) that defendant stole certain property "belonging to the Ralls County Electric Cooperative." The location of the property at the time is nowhere stated. It might have been taken from a truck, from a street, from a field, or from almost any other conceivable place, in so far as the information goes. The first count is of no help in this connection, and counsel's statement is in error.

The Moten case has been noted in subsequent cases and, so far as we have found, it still represents the Missouri law on this subject. See, State v. Linders, 299 Mo. 671, 253 S.W. 716, 719; State v. Miller, 359 Mo. 327, 221 S.W.2d 724, 725. The requirement of such an allegation as was omitted

here was again recognized in State v. North, 337 Mo. 470, 85 S.W.2d 46, where the language used was held sufficient. The substance of the statutory requirements for second degree burglary is clearly and concisely stated in State v. Ruffin, Mo., 286 S.W.2d 743, 745, 746, and in State v. Parks, Mo., 336 S.W.2d 369, 370.

■■ Defendant also complains that the burglary information is duplicitous in that it charges the burglary of *two* separate buildings, as indeed it does. Respondent merely asserts that this did not constitute two separate charges. While we are not required to rule on this, having already held that part of the information to be fatally defective, it does appear that this information, charging the burglary of "two separate buildings," charges two separate offenses in one count; this may not be done except where specifically authorized by statute (as in § 560.110). State v. Kellmann, 343 Mo. 762, 123 S.W.2d 70, 72. And see, in principle, State v. Huffman, 136 Mo. 58, 37 S.W. 797. Generally, offenses may be jointly charged if they " 'arose out of the same transaction, and are so far cognate as that an acquittal or a conviction of one would be a bar to a trial for the other.' " State v. Talley, Mo., 12 S.W.2d 28; and, an information may properly charge the employment of different methods in the accomplishment of a crime, such as an assault. State v. Nieuhaus, 217 Mo. 332, 117 S.W. 73; State v. Ivy, Mo., 192 S.W. 737. Such is not the case here, for the burglary of each building, though one crime may immediately follow the other, is a separate offense. If new charges are to be filed, this should be corrected. We do not decide here whether it was necessary to attack the information on this ground by motion. State v. Sherman, 137 Mo.App. 70, 119 S.W. 479.

■ The jury, by its verdict, found the defendant guilty of both burglary and stealing, separately, "as charged in the information" and fixed separate punishments. The court had given Instruction No. 4, setting out the requirements of the offense of stealing property of the value of at least $50, instructing the jury that it might find defendant guilty or not guilty of this charge, if it found him not guilty of burglary. It is true that the jury purportedly found him guilty of burglary, but there could be no such valid verdict or judgment because of the absence of a valid information. Consequently, the situation is in substance the same as if there had been a verdict of not guilty on the burglary, and Instruction No. 4 furnished a sufficient basis for the verdict of guilt in stealing.

■ We now note defendant's contentions of certain trial errors. Counsel complains of the admission in evidence of the electric drill and the various tools. The only such exhibit complained of in the motion for new trial was the electric drill. Indeed defendant affirmatively claimed and testified that he had previously owned the other tools produced, or substantially all of them. There was no objection when the drill was first identified, offered and received in evidence. That, in itself, is fatal to any complaint now. The objection which counsel sought later to preserve as to the tools, generally, was that the truck had been left parked, unlocked and with a window open, from 2:00 a. m. to 10:00 a. m., not under the control of or in the possession of defendant, and not under constant observation by the police. The inference sought to be thus drawn was that it may have been tampered with and that things found in it had no necessary connection with the defendant. On the merits this question goes to the weight of the evidence and not primarily to its admissibility; certainly, in the court's discretion, it was entirely proper to admit the drill (and the other tools) in evidence, subject to defendant's explanations. So far as the question of search was concerned, defendant had executed a written consent.

A point is made that Instruction No. 2, submitting the crime of burglary of the "building or buildings,"—"does not follow the language of the Information, and that there is therefore no valid charge upon which said Instruction could be founded." Since we have held the burglary information bad, it would be useless to rule on the instruction. In this instruction the State supplied the element missing from the information, but we note that it contains, in slightly different form, the element of duplicity already discussed.

■ The complaint of Instruction No. 10 on circumstantial evidence is merely that it "requires a lesser degree of proof, than if direct evidence was involved." This assignment, if sufficient under our Rule 83.05(e), was not properly preserved in the motion for a new trial where defendant merely made a generalized complaint of eleven instructions in one assignment. See, generally, State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 309; State v. Swindell, Mo., 271 S.W.2d 533; State v. Turner, Mo., 320 S.W.2d 579.

■ The last point made here is that the trial court erred in failing to discharge the jury when the Hannibal Chief of Police was on the stand, and thereafter. The witness was asked, on redirect examination, "Why did you order them held in jail?" He answered: "Their names have been in all law enforcement bulletins through the area. They all have lengthy records." The complete answer to the present contention is that defense counsel merely objected, after the answer was made and with no reason specified, and moved that the answer be stricken; the court sustained the objection, ordered the answer "stricken from the record," and further told the jury that it would "disregard that last statement, please." The court actually gave more relief than was requested and it may not now be convicted of error. In the same point

counsel also complains of the attempt of the prosecutor, in cross-examination of the defendant, to inject the matter of arrests of the defendant. The court sustained every objection which was made to those questions, admonished the jury, upon request, to disregard one such question, and in connection with a different question dealing with a fine for a supposed peace disturbance charge, said: "I think you should limit yourself to specific times with reference to either pleas of guilty or convictions, and not arrests, for such matters go only to the question of credibility and not to the guilt or innocence in this particular case." No error is demonstrated on this point. It would be useless to consider those cases where motions to discharge the jury for improper conduct of the prosecutor were promptly made. We do not imply, however, that the situation here was such that the trial court should necessarily have granted a mistrial, even had such a motion been made. It is allowed a wide discretion in such circumstances. This was not such a situation as would require the court to grant a mistrial without motion. See the discussion in State v. Laster, Banc, 365 Mo. 1076, 293 S.W.2d 300, 305, certiorari denied Laster v. State, 352 U.S. 936, 77 S.Ct. 237, 1 L.Ed.2d 167.

So far as concerns the conviction for stealing, we find no error in those parts of the record which we examine under Rule 28.02, independently of assignments in a motion for new trial. Sentences were imposed separately, after allocution was granted, for burglary and for stealing, with the terms to run consecutively. That part of the judgment and sentence dealing with stealing is affirmed; that part dealing with burglary, which we deem to be void, is reversed and the cause remanded with reference thereto.

It is so ordered.

All of the Judges concur.