**STATE of Missouri, Respondent,**

v.

**Olin Neal LAFFERTY, Appellant.**

**No. 52199.**

Supreme Court of Missouri,
Division No. 1.

June 12, 1967.

See also Mo., 416 S.W.2d 157.

Norman H. Anderson, Atty. Gen., Jefferson City, Mo., Selden M. Jones, Sp. Asst. Atty. Gen., Kansas City, Mo., for respondent.

Ben J. Martin and Paul R. Coffman, Springfield, Mo., for appellant.

HIGGINS, Commissioner.

Appellant, charged by information in the Circuit Court of Greene County, March 9, 1965, with a felony of carrying a concealed weapon in violation of Section 564.610, V.A. M.S., was convicted by a jury which as-

sessed his punishment at two-years' imprisonment in the penitentiary, and sentence and judgment were rendered accordingly.

On January 30, 1965, Edward Wade Earls owned and operated a trailer court and "coin-o-matic" laundry at 1545 North Barnes, Springfield, Greene County, Missouri. He lived at 2155 East Division in Springfield; it was "somewhere around 300 foot, 350, something like that from my house to the laundry." Inside the laundry were "eight washers, two driers, a coin changer, cigarette machine and a pop machine." The coin changer was on the back or south wall of the laundry. Mr. Earls had a 2-way radio listening device between his house and the laundry and between 7:30 and 8:00 p. m. he heard a noise over the device coming from the laundry. In response to the noise, "I told my wife to call the police and I took a gun and went to the laundry, went immediately to the laundry." It took him about two minutes to reach the laundry. "I saw this fella here (indicating defendant) in my changer with money in his hand, and he was at my changer at the wall. * * * I held my gun (a .22 revolver) on him when I went in the door. I had the gun in my hand and I told him to turn around and lay his money down and stand still. And he said, 'Well,' he said, 'You've caught me redhanded.' He said 'I've got money that I'll give you to let me go before the police get here.' And he started to put his hand in his back pocket and I told him to stand still till they got there, and he did. And when the police officer arrived, he was askin' me what was goin' on and I was telling him, and I told him I thought the man was armed. And he searched him, I asked him to search him, and he checked in his right pocket, back—." He saw the officer take a pistol from defendant's back pocket.

Patrolman Raymond Landers, with fourteen years on the Springfield police force, arrived at the laundry around eight o'clock in response to a radio dispatch. "I pulled up in front of the laundry and got out of my car, went in the east door of the laundry, and as I went through the door I saw Mr. Earls standing on the right side of the door and partially out in the middle of the floor, holding a gun on Mr. Lafferty, who was approximately 12 to 15 foot from him, standing back more in the southern end of the laundry." Officer Landers placed the defendant under arrest and searched him. "I found a stainless steel stiff wire in his righthand coat pocket, and a loaded .22 caliber revolver, loaded with hollow point bullets in his right hip pocket." No part of the revolver protruded from defendant's pocket and he wore a car coat which covered the pocket. The officer asked defendant about the gun when he took it from his pocket and "(h)e stated he had no knowledge of where the gun came from."

Appellant admitted that he was in the laundry on the occasion described by Mr. Earls. "There was no one in the laundry with me. My wife was sittin' outside in the car. * * * I went in the laundromat to get some dimes. I took some halves in there and put 'em in the changer and got some dimes. * * * We save dimes. We had coin books. * * * I put in three half dollars and got dimes for 'em. * * * I guess I got five for each one." He denied having a firearm on his person and, when asked if he had seen the weapon that Officer Landers identified as the one which he took from defendant's right hip pocket, he said, "It could possibly have been the same one he came up—he came up with a little old gun, but I don't know what kind it was." Upon cross-examination he was asked to explain his having eighty-eight dimes on the table and in his hands when Mr. Earls found him. He answered, "I had about 8 or 9 dollars in dimes in my coat pocket but I didn't have no money in my hand when this liar come in, that got up and testified." In respect to the weapon, defendant was cross-examined:

"Q. Are you claiming that he (Officer Landers) is the one that planted this gun on you? * * * A. The gun wasn't on me.

"Q. * * * Are you claiming that he brought out the gun for the first time—A. He must've. I sure never had it." He admitted to convictions for "gamblin'" once. * * * Maybe drunk. I don't remember, and burglary tools once. * * * Petty stealing once." He "guessed" he had been convicted five or six time of state or federal crimes before this arrest. His wife "drove off when the man come in and throwed the gun on me."

Gary Burks had known appellant for about eight years. He stated that he arranged to have Officer Landers meet him at Big Boy's Cafe at Commercial and Glenstone. The meeting took place about two months before the trial. "I asked him about the case, you know, asked him if Mr. Lafferty had a pistol, which he told me he hadn't, but he said, 'Well, it don't make any difference if he had one or not.' He said, 'We've got him trapped and we're goin' to put him away anyhow.'" No one else was present during the conversation, and the witness admitted to convictions of petty theft and a drinking violation.

Ronald L. Robb said he saw Officer Landers and Gary Burks at Big Boy's about two months prior to the trial. He didn't know either at the time. They were in a booth and Witness Robb said he overheard Gary Burks say, "'Lafferty said he didn't have no gun on him,'" and Officer Landers replied, "'Well, it doesn't make any difference whether he did or not. We've got him trapped so he's going to prison anyway.'"

Mr. Earls testified in rebuttal that the dimes mentioned by appellant in his testimony were in appellant's hand at the time he first confronted him in the laundry. They were identified as Exhibit E. "I had somewhere around 12, 15 dollars in my changer and there was a dollar and a half in dimes left and there was, I believe, 2 or 3 half dollars in the changer.

"Q. Would it have been a pile approximately like exhibited by this pile here (Exhibit E) in his hands? A. I would say yes. There should have been somewhere around nine dollars.

"Q. Now, were those in his pocket or in his hands? A. In his hands. * * * He started to his pockets with 'em and he got about like so (indicating), and I told him to stop and lay 'em on the table, and he did so."

Mr. Earls observed the search made by Officer Landers of appellant and there was nothing in the officer's hand when he reached into appellant's right rear pocket and took out the revolver.

Eva Mae Earls also saw Officer Landers search the appellant and take the weapon from his pocket. The officer had no weapon in his hands prior to the search, his own weapon being in its holster and her husband's being in his hand held on appellant.

Officer Landers was also recalled in rebuttal. He testified to a conversation with Gary Burks at Big Boy's Cafe. "The only thing that was mentioned was that he informed me that Lafferty was getting pretty jittery about the case." The officer made no statements about the case; he did not know Robb.

Appellant was represented by counsel upon trial, in preparation and argument of his motion for new trial, and until after the filing of the transcript in this court on October 15, 1966. On December 16, 1966, he filed a motion in this court "to have appeal considered without further entry by defense counsel" on "those Points properly preserved for appeal in Appellant's Motion for New Trial and those matters required by Criminal Rule 28.02, V.A.M.R. to be reviewed." The motion was sustained.

Appellant does not question the sufficiency of the evidence to sustain the conviction; suffice to say that the foregoing evidence would support a finding that defendant had a revolver concealed on his person on the described occasion. State v. Crone, Mo., 399 S.W.2d 19, 20-21 [2-4].

By point 1, appellant charges "The Court erred in admitting, over objection of this Defendant, evidence of the crime of petty larceny and other crimes that were allegedly committed prior to the time of commission of the crime with which this Defendant was charged and tried, of which Defendant had never been convicted." This charge is made also in points 2, 3, 4, and 6, where it is said that the State's evidence "dealt chiefly and overwhelmingly with the commission of larceny and other crimes that were allegedly committed prior to the time of the commission of the crime with which this Defendant was charged and tried"; that such evidence was entirely incompetent and irrelevant to any issue or proof necessary for conviction on the charged crime; that admission of such evidence only served to infuriate the jurors resulting in the conviction and sentence for carrying a concealed weapon.

■ Insofar as these contentions may relate to the five or six prior convictions of defendant on state and federal charges of petty larceny (stealing), gambling, drunkenness, and "burglary tools," admitted by defendant on cross-examination, they may be disposed of summarily because no objections were made by defendant to the cross-examination questions which elicited these answers; and, even so, the evidence thus adduced was properly admitted for impeachment purposes when the defendant took the witness stand in his own behalf. State v. Morton, Mo., 338 S.W.2d 858, 861 [2].

■ Insofar as points 1, 2, 3, 4, and 6 may be concerned with testimony of events leading up to the discovery of the concealed revolver which may have tended to establish that appellant may have committed or was in process of committing a separate and distinct offense for which he was not on trial, such points may again be ruled summarily because such evidence involved matters so inseparable from the circumstances of the crime charged that it falls within the exception to the rule appellant would invoke. State v. Blocton, Mo., 394 S.W.2d 323, 325 [3].

■ Point 5 is an extension of charges previously discussed. It is a specific complaint that Exhibit E, $18.80 in dimes, was never admitted in evidence but was visible to the jury and "served again to infuriate the minds of the jurors against this Defendant." This point is also without merit because the only record that defendant made going to Exhibit E was a general objection to its admission in evidence and the objection was sustained, thereby granting defendant all the relief requested. A stronger case for the same relief existed and was denied in State v. Wilson, Mo., 237 S.W. 776, where two revolvers taken from appellant upon his arrest were exhibited to and identified by witnesses and were left on the counsel table throughout the trial, were never offered in evidence, and defendant's objection to their display was not sustained. The court could not "see wherein the presence of said revolvers lying on the counsel table prejudicially affected appellant's rights * * *." 237 S.W. 1. c. 778 [6].

The review required by Criminal Rules 28.02 and 28.08, V.A.M.R., shows that the information is in proper from and sufficient; defendant was accorded a jury trial upon his plea of not guilty; the verdict is in proper form and is responsive to the issues; the punishment is within legal limits; the motion for new trial was considered; allocution was granted.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.