STATE of Missouri, Plaintiff-Respondent,

v.

Elmer Charles KINDER, Defendant-Appellant.

No. 34580.

Missouri Court of Appeals, St. Louis District, Division Two.

June 5, 1973.

Limbaugh, Limbaugh & Russell, Stephen N. Limbaugh, Cape Girardeau, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Daniel P. Card, II, Jefferson City, Dennis C. Brewer, Perryville, Stanley G. Murphy, Pros. Attys., Farmington, for plaintiff-respondent.

KELLY, Judge.

This appeal is from a conviction of manslaughter after a jury trial. The jury was unable to agree on the punishment, and the Court imposed a sentence of five years in the custody of the Missouri Department of Corrections.

On appeal the appellant contends that the trial court committed error in the following respects:

1. in allowing a Missouri State Highway Trooper to testify as a ballistics expert and render an opinion that a bullet fragment which was removed from the skull of the victim was fired from appellant's gun;

2. in failing to sustain appellant's motion for a directed verdict of "Not Guilty" at the close of the State's case for the reason the State failed to establish that the shooting was not accidental and therefore did not make a submissible case of manslaughter;

3. in submitting to the jury Instruction No. 1—a manslaughter instruction—because it did not define the term "manslaughter", nor did it distinguish between voluntary and involuntary manslaughter, nor did it define "culpable negligence"; and

4. in admitting into evidence certain photographs, Exhibits H, I, J and K, because they did not depict the scene of the crime as it existed at the time of the alleged offense and there was no testimony that they fairly represented the appearance of the premises at the time of the alleged crime.

The facts, viewed most favorably to the state, as we must in determining the submissibility of a criminal case,[1] are that the appellant, together with his son, returned to his farm in Perry County, Missouri, from work, arriving there sometime near 8 p. m. on Friday, April 17, 1970. Upon his arrival he found several persons there sitting at the supper table, among whom was Jeremiah F. Collins. Others present were appellant's wife, Mrs. Betty

1. State v. Mintner, 429 S.W.2d 762, 763 (Mo.1968).

Kinder, 2 daughters, Betty Jane Kinder[2] and Karen Kinder, and J. P. "Jesse" Sittner, appellant's cousin.

Sittner and Collins were formerly father-in-law and son-in-law. Collins had divorced Sittner's daughter but nevertheless continued to live and work with Sittner. Sittner and appellant were not only relatives but had been good friends over the years, and Sittner was referred to by members of Kinder's family as "Uncle." Collins had been introduced to appellant by Sittner and so far as the evidence shows they were not on unfriendly terms although appellant had learned that Collins and Betty Jane, his daughter, had been corresponding for some time and he had discussed this with Sittner and told Sittner that he did not approve of their corresponding; that "he wasn't goin' to get in the family." Sittner conveyed this to Collins and Collins discontinued the correspondence with Betty Jane; he did, however, call her on the telephone at times when he thought the appellant was asleep or away from home. Early on the Saturday morning preceding April 17, 1970, at about 2:00 a. m., Collins had called Betty Jane at the Kinder home and they discussed their marriage over the telephone. According to Betty Jane, she and Collins had been discussing marriage for about one year and her father did not approve; for this reason she had not told him of their plans to get married in December of 1970, and she had also instructed Collins not to mention it to her father.

On the fatal night, Sittner and Collins had drunk a couple of bottles of beer while en route from the job site in Mehlville, St. Louis County, Missouri, to the farm. Appellant had also had some drinks that evening while en route home, and was about "half-drunk" when he arrived there.

Since they were expecting Sittner and Collins for supper, Mrs. Kinder and Betty Jane had prepared supper early, and shortly after Sittner and Collins arrived they decided to put supper on the table and start eating, although the appellant had not yet arrived home. The kitchen table was situated so that one side of it was up against a wall in the kitchen, leaving only both ends and the other side available for seating four diners at the table; one at each end and two along one side of the table facing the wall. Within a short time after the table was set, appellant arrived and took his seat at the one end of the table in a special chair made to accommodate him because he was a very large man; Collins was seated facing the kitchen wall and to appellant's right; Betty Jane sat next to Collins, to his right; and Sittner was seated in a chair at the end opposite appellant, facing him. Appellant's son did not remain for supper, but left a short time after arriving home from work and did not return home at any time that evening.

After supper the diners remained around the kitchen table drinking, talking, laughing and joking. Mrs. Kinder took the younger daughter, Karen, upstairs to bed. During this time appellant teased Collins and said that he would pay Collins $1,000.-00 if he'd marry Betty Jane and he would also build them a house if they got married. Everybody was having a good time. After a while, at about 10:00 p. m., someone brought up the subject of wanting some "hard liquor" and that someone should go get it. Collins and Betty Jane drove into town in Sittner's truck, purchased a large size bottle of Seagram's V. O., returned to the home and the drinking resumed. Throughout the evening all of those present, except the appellant, had moved about and changed seating arrangements. Suddenly the appellant "jerked" a gun out of his pocket and shot it into the ceiling, hitting above where Collins and Betty Jane were seated. The gun fell on the floor after it was fired, and Sittner picked it up and put it on the table. No explanation was given to account for this

---

2. At the time of trial, Miss Kinder had married and was identified as Mrs. Betty Jane Kinder Adams.

incident. Collins kidded about having seen pistols with blanks, and Sittner took the gun, broke open the chamber and removed four shells and showed them to Collins to demonstrate that they were not blanks, but live shells.

Conversation resumed for approximately 30 minutes when Collins requested Betty Jane go outside to the truck and get him some more beer. Betty Jane left and at the same time Sittner went outside to an outdoor rest room, leaving appellant and Collins sitting at the kitchen table. Both Sittner and Betty Jane were gone for a short period when they heard another shot as they were returning to the house. Betty Jane was several feet ahead of Sittner and rushed to the house, being the first to enter. When Betty Jane came into the kitchen she saw her father and Collins still seated at the kitchen table; the appellant was still in his chair at the one end of the table, and Collins in the chair immediately to appellant's right facing the wall, but with his head tilted backwards at a slight angle. She looked at Collins, and he said nothing; her father said something to her like "go to bed or go get your mother" and as she started to go through the kitchen door she turned around and looked at Collins and saw blood coming from his head. Betty Jane ran in and got her mother, and after she returned to the kitchen she ran over to Collins, who was still sitting in the same position on the chair, touched him and decided he was dead. She then looked at her father and asked him why he had killed Collins. She went to Collins, put her arms around him and said: "You killed him," and her father replied "Yes, I shot him." She then said: "Why, why did you kill him? You knew I loved him." To which her father responded: "Yes. It was an accident, I didn't mean to do it; it was an accident." Betty Jane then ran from the house to a neighbor's house and told them what had happened.

Sittner testified that by the time he had returned to the kitchen Betty Jane was screaming; he turned around and saw Collins sitting there and he was wondering what was wrong until he observed some blood running from Collins and he also observed the appellant still sitting in the same chair he had occupied all evening holding the gun in his hand. Appellant put the gun back on the table. Sittner asked the appellant "Well, what'd you shoot that boy for?"; but the appellant just kept sitting there. Sittner then "stepped back out the door and took off."

Mrs. Kinder called the sheriff who arrived at the scene accompanied by the Coroner and the Prosecuting Attorney. When they arrived they found Collins still in the chair with his head tilted back against the back of the chair; he was dead. Ultimately the Coroner determined that cause of death was "massive brain damage probably caused severe hemmorrhage in the brain." The massive brain damage was brought on "By impact of a bullet." At the time of the arrival of the local authorities appellant was standing outside the house in the yard by the driveway leading to the house. The gun was found lying on the kitchen table in front of a chair where appellant had been sitting. Examination of the weapon showed that the chamber of the gun contained two spent shell casings and three loaded shells.

■ With reference to appellant's complaint that the trial court committed error in allowing a Missouri State Highway Trooper to testify as a ballistics expert and render an opinion that a bullet fragment which was removed from the skull of the victim was fired from appellant's gun is without merit. Any error, if such there was, in the admission of this evidence was cured by the testimony of the appellant wherein he admitted firing the revolver and shooting the victim. There was no longer any issue in the case in this respect; any error in the admission of this testimony could not be said to be prejudicial error requiring a reversal of the judgment of conviction on this grounds.

■ Appellant assigns as error the failure of the trial court to sustain his motion for a directed verdict of "Not Guilty" at the close of the State's case for the reason the State failed to establish that the shooting was not accidental and therefore did not make a submissible case of manslaughter. Any error as to this ruling of the trial court was waived when the appellant elected to offer evidence in his own behalf. State v. Stevens, 467 S.W.2d 10, 24 [19] (Mo.1971); 9A Missouri Digest, Criminal Law ■ We, therefore, rule this point against appellant.

With respect to the contention that the trial court erred in reading to the jury Instruction No. 1—the verdict directing instruction—we, in this court, are confronted with an attack on the instruction which was not made in the motion for new trial filed after the jury verdict. In his motion for new trial appellant's complaint directed against Instruction No. 1 was that the manslaughter portion of the Instruction failed "to require the jury to find the shooting which caused the death of Jeremiah Collins was a wilfull and premeditated act." However, in his brief on appeal, appellant attacks this same instruction on the grounds that it did not define manslaughter, "especially as to being voluntary or involuntary and if involuntary, there was no definition of culpable negligence."

■ Contentions of trial court error presented to the trial court in a motion for new trial and ruled adversely to the appellant which are not briefed on appeal are deemed waived or abandoned. State v. Warren, 469 S.W.2d 662, 663 [1] (Mo.App. 1971); State v. Lay, 427 S.W.2d 394, 403 [12] (Mo.1968); Rule 28.02, V.A.M.R. Where, as has been done here, contentions not presented to the trial court in a motion for new trial are presented for the first time in appellant's brief on appeal, nothing has been preserved for review. State v. Martin, 451 S.W.2d 96, 99 [3] (Mo.1970); State v. Brookshire, 353 S.W.2d 681, 685 [10] (Mo.1962); Rule 27.20(a). For these reasons we are precluded from considering appellant's allegations of error directed against Instruction No. 1.

Appellant's complaint that the trial court erred in admitting into evidence Exhibits H, I, J and K, is also without merit. These exhibits were photographs of the kitchen area in the Kinder home. Exhibit H purported to be a photograph of the ceiling of the kitchen showing a hole in the kitchen ceiling caused by appellant on the first occasion he fired the revolver. The other exhibits were introduced for the purpose of showing the location of the kitchen table and the chairs at which the four persons partook of their supper and where the shooting occurred. These pictures were taken two days after the incident—on April 20, 1970—by Cpl. Bennie Rapert of the Missouri State Highway Patrol and were identified by Betty Jane Kinder as depicting the scene the night of the shooting. She was corroborated with respect to one of the photographs by Sittner.

■ Photographs of the scene of an alleged crime are admissible into evidence at criminal trials if they depict conditions and circumstances surrounding the alleged crime and aid in throwing light on a material issue. State v. Brown, 312 S.W.2d 818, 822 [7] (Mo.1958); State v. Thresher, 350 S.W.2d 1, 6 [6] (Mo.1961). The determination as to the admissibility of photographs is a matter resting in the sound discretion of the trial court, State v. Smith, 485 S.W.2d 461, 468 [13] (Mo. 1972), and the appellant has the burden of demonstrating an abuse of the trial court's discretion if his complaint is to be the basis for a finding of error.

■ From the record we conclude that the photographs were properly admitted into evidence and the trial court properly exercised its discretion in this respect. Any changes in the location of chairs around the table as contended by the appellant would go only to the weight to be given to the exhibits, not to their admissibili-

ty. State v. McGee, 336 Mo. 1082, 83 S. W.2d 98, 107 [29] (1935); State v. Redding, 357 S.W.2d 103, 109 [15] (Mo.1962). We hold this point too is without merit.

We have considered the sufficiency of the information, verdict, judgment and sentence and find them to be in proper form. Rule 28.02.

Thus, having disposed of all of those errors allegedly committed by the trial court adversely to the appellant, we affirm.

SMITH, P. J., and SIMEONE and McMILLIAN, JJ., concur.