**STATE of Missouri, Plaintiff-Respondent,**

**v.**

**Robert L. ROGERS, Defendant-Appellant.**

**No. 36232.**

Missouri Court of Appeals,
St. Louis District, Division 3.

May 13, 1975.

Carr L. Woods, Bowling Green, E. Rex Bradley, Public Defender, St. Charles, for defendant-appellant.

John C. Danforth, Atty. Gen. and K. Preston Dean, II, Asst. Atty. Gen., Jefferson City, James Millan, Pros. Atty., Bowling Green, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for plaintiff-respondent.

SIMEONE, Presiding Judge.

This is an appeal by the defendant-appellant, Robert L. Rogers, who was found guilty by a jury on April 11, 1974, and sentenced by the court to four years for the offense of possession of burglar's tools and to two years for attempted burglary in the second degree to run consecutively. §§ 560.115, 560.045 and 556.150 RSMo 1969, V.A.M.S. He appeals. For reasons hereinafter stated, we affirm the judgment of conviction.

Since the appellant does not question the sufficiency of the evidence to make a submissible case, we will relate only those facts necessary for the disposition of the points raised on this appeal.

In 1973, Mrs. Ruth Leeman owned a two and one-half story building (sometimes referred to as a three story building) located at 311 Georgia Street in Louisiana, Missouri. The first floor was rented to a shoe store; she occupied the second story as her living quarters and used the third floor as a storeroom. In the storeroom there was located a gas stove, a wardrobe, a table, some boxes and a clothes line. The storeroom had two windows, "pretty good size," reach-

ing "almost from the ceiling to the floor . . . ." One can see in through the windows into the storeroom. Immediately behind Mrs. Leeman's building was a building referred to as the D & W Building.

In the afternoon of October 21, 1973, about 2:45 p. m., Officer John Whitaker, of the Louisiana police department, received a call that "there were two subjects going up behind J. B. Sterne Funeral Home up the stairway carrying a bag of tools." He went immediately to the building, calling another police officer—Wesley Meyers—on the way, proceeded to the roof of the D & W Building, and saw some ninety feet away, on the roof of the Leeman building, the defendant and another man, Patrick F. Johnson, kneeling down next to one of the windows of the Leeman building. ". . . Mr. Rogers was down next to the window. He had a large screwdriver in his hand prying on the molding of the window. Mr. Johnson was kneeling down on the other side of the window holding on to the facing." There was also a "green Army type duffel bag" containing tools lying on the roof to the left of the defendant. Both of the two men had gloves on. The officer drew a weapon and told them to "raise up from the window, put their hands on top of their head, and come over to the next roof . . . ." The men complied, and were arrested. The duffel bag remained on the Leeman roof by the window. Meanwhile, Officer Meyers arrived. Officer Meyers picked up the "bag of tools" and brought it to where Whitaker was. The two men found on the roof and the duffel bag of tools were taken to the Louisiana Police Station. The bag was in the officers' possession until they arrived at the station. Then the bag containing the tools was in the police station until it was turned over to the sheriff of Pike County, Dave Jenkins,

sometime later in the afternoon. Although the bag was not "observed" by Officer Whitaker "all the time," it was located in the police station until turned over to Sheriff Jenkins.

At trial, Officer Whitaker identified the duffel bag (State's Exhibit Number 3) as the container of the tools at the time he first saw the two men on the roof. He also identified the various tools and went through and "picked out" the various tools.[1] The screwdriver lying on the roof was picked up by Officer Meyers at the same time he picked up the other tools. Upon investigation of the window where the two men were, Officer Whitaker noticed that some of the facing had been pried loose, and the glass was broken in the left-hand and right-hand corners of the window. Glass was lying on the roof. Officer Whitaker acknowledged that there was a nylon rope and a pair of gloves in the duffel bag at the time it was taken to the police station, but, for some unexplainable reason, these two items were not in the bag at the time of trial. Officer Whitaker at trial identified the tools as the same ones he and Officer Meyers took from the roof, except that the piece of nylon rope and one pair of gloves were missing.

After the bag of tools was taken to the police station, the sheriff of Pike County came to the station a few hours later and saw the bag of tools there. Officer Whitaker was labeling some of the tools. The bag and tools were turned over to the sheriff, and he took them to his office in Bowling Green, where they remained in a locked closet. Except for the preliminary hearing and the trial, the tools remained in his closet. The sheriff, too, "believed" he remembered "seeing a rope there in the police station, however, I don't see it there now."

---

1. One key hole saw, one brace, one large cold chisel, one hacksaw, two crowbars, 18″ and 24″, one mall with handle cut off, several punches, one wood brace, a small pair of vice grip pliers, one wood expansion bit, one flashlight, two blades for the key hole saw, two ice picks, two nail sets of punches, a pry bar, one large screwdriver, and one pair of leather gloves.

During trial, the state offered and the court received in evidence a photograph showing the upper half of Mrs. Leeman's building and the two windows. Officer Whitaker testified that, "[e]xcept for the fact that the windows have been boarded up," the picture fairly and accurately portrayed the location of the building and the location of the windows on the day of the alleged offense. The state also offered and the court received in evidence the duffel bag and tools. Objections were made that the photograph did not fairly and accurately represent the building as .of the date of the occurrence and that it had not been established that there was a "continuous course of custody" as to the bag and tools. Appellant's attorney objected to the introduction of the bag and tools stating, "It has been testified to that they were taken and left in a room apparently with no one else. There are items that are missing and we do not believe that the State has proved that these have been in the continuous custody of the officers who have testified."

After instructions were given, the jury found the defendant guilty of possession of burglar's tools and attempted burglary in the second degree. After motion for new trial was overruled, the defendant was granted allocution and sentenced.

On this appeal, defendant contends that the court erred (1) in admitting the photograph because it "did not fairly and accurately depict the scene as of the date of the occurence [sic]" and (2) in overruling defendant's objection to the introduction of the duffel bag and tools "on the grounds that the state failed to prove the necessary chain of custody and possession required under the law . . . ."

■ We rule both contentions against appellant. Photographs of the scene of an alleged crime are admissible in evidence at a criminal trial if they depict the conditions and circumstances surrounding the alleged crime and aid the jury in throwing light on a material issue in the case. The admissi-bility of photographs of a scene is a matter resting primarily within the discretion of the trial court. State v. Kinder, 496 S.W.2d 335, 339 (Mo.App.1973). The test is whether the photographic evidence shows relevant facts which will aid the jury. State v. Johnson, 508 S.W.2d 18, 20 (Mo.App.1974). The essential factor whether a photograph is admissible depends upon whether the photograph represents the observation of the witness. The accuracy of the photograph may be proved by anyone who knows the facts. Photographs are admissible when the witness shows that they are a reasonably accurate representation of the place or thing in question in order to aid the jury in understanding the testimony of the witness. The fact that a photograph may be incorrect in certain particulars or that there are changes in the scene does not affect the admissibility of the photograph but only affects the weight to be given to it by the jury. State v. McGee, 336 Mo. 1082, 83 S.W.2d 98, 106–107 (1935); State v. Kinder, supra, 496 S.W.2d at 339; State v. Johnson, supra, 508 S.W.2d at 20; State v. Moore, 353 S.W.2d 712, 714 (Mo.1962).

■ The fact that Mrs. Leeman's windows of the building were boarded up does not affect the admissibility of the photograph introduced and admitted by the trial but only the weight to be given to the photograph. Officer Whitaker testified that, except for the fact that the windows have been boarded up, the picture "fairly and accurately" portrays the location of the building and windows on that October day. The decision relied upon by the appellant, Fox v. City of Kansas City, 343 S.W.2d 200 (Mo.App.1960—a civil case), presents an altogether different issue unrelated to this criminal proceeding. We therefore find no error in the admission of the photograph in this respect.

Next, appellant complains that the trial court erred in overruling his objection to the introduction of the duffel bag and the various tools contained therein because a chain of custody was not shown. His con-

tentions are really two-fold: (1) that because Officer Whitaker testified that the tools were not in his possession at all times until they were turned over to Sheriff Jenkins and there were no identifying marks on the items, no chain of custody was shown, and (2) that since two items were missing from the bag—a nylon rope and one pair of gloves—there is an inference that items were added or that the items introduced were not the same ones as taken at the scene.

█ It is, of course, a general principle that the state must show a "chain of custody" of the items introduced in evidence. The reason for this requirement is to prevent tampering, alteration or substitution of exhibits sought to be introduced at trial. But it is certainly unnecessary that some witness must have continually watched the exhibit or kept it in his personal possession. State v. Rose, 428 S.W.2d 737, 740 (Mo.1968); State v. Orr, 493 S.W.2d 374, 377 (Mo.App.1973). All that is necessary to establish a chain of custody of an exhibit is that the evidence must afford a reasonable assurance that the exhibit was the same at trial as it was when first obtained. It is sufficient if the evidence shows reasonable assurance that the exhibit is the same and in the same condition. State v. Nolan, 499 S.W.2d 240, 251 (Mo. App.1973); State v. Baines, 394 S.W.2d 312, 316 (Mo.1965).

█ The fact that Officer Whitaker did not have the bag and tools in his possession all the time is not significant. The tools were taken from the scene, placed in the police station, given to the sheriff where they remained in his locked closet except for the preliminary hearing and trial. Officer Whitaker positively stated that they were the same tools that he saw the day when he took them back to the police department. This is sufficient. Officer Meyers also identified the tools he saw as those in the courtroom. Officer Whitaker testified that at the time he took the bag and tools in his possession, they were marked and labeled at the police station and those markings and labels were still on the tools. We hold the state showed a sufficient chain of custody to satisfy the rule. State v. Rose, supra.

█ The appellant's other contention is that, since one pair of gloves and a length of rope were missing from the bag and their absence could not be explained by any of the officers, an inference is raised that items may have been added or were not the same as those found on the roof of the building. We hold this contention is also insufficient to require a reversal of this cause.

In State v. Thomas, 360 S.W.2d 694 (Mo. 1962), the appellant contended that the court erred in admitting an electric drill in the defendant's trial for burglary and stealing. Thomas contended that the drill was taken from a truck in which he was arrested. The truck had been left parked, unlocked and with the window open from the time of arrest until the next morning, a period of some eight hours. During such time the truck was not in the control of the defendant or the police. The defendant therefore sought to draw the inference that the truck may have been tampered with, and the things found in it had no necessary connection with him. Our supreme court rejected this contention on the ground that such facts did not make the evidence inadmissible but that the inference went to the weight of the evidence and not primarily to its admissibility. The court, also held that it was entirely proper, in the trial court's discretion, to admit the drill. State v. Thomas, supra, 360 S.W.2d at 698.

We hold the trial court did not err in admitting the bag and tools, even though one pair of gloves and a length of rope were unexplainably absent.[2]

2. The sheriff testified that one pair of gloves was put with Mr. Rogers' jacket, and not put in with the tools, and he didn't know what happened to them.

The trial court had discretion to admit the bag and numerous tools, and the fact that two items were missing was a matter affecting the weight of the evidence, not its admissibility.

We have read the entire transcript, including the defendant's evidence which consisted of the testimony of Patrick Johnson, who testified that he and the defendant were on the roof because Johnson thought his estranged wife was in the vicinity of Bowling Green or Louisiana, had an apartment there, and he was looking for some antique items his wife had taken, including a stove.

We have examined the briefs and all the authorities relied upon by both the state and the appellant. We are convinced that no prejudicial error occurred and that the judgment of conviction should be affirmed.

The judgment is affirmed.

McMILLIAN and GUNN, JJ., concur.