STATE of Missouri, Respondent,

v.

Charles McCLAIN, Appellant.

No. 37196.

Missouri Court of Appeals,
St. Louis District,
Division Three.

April 6, 1976.

R. A. Hampe, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Charles L. Howard, Asst. Attys. Gen., Jefferson City, James J. Barta, Asst. Circuit Atty., Brendan Ryan, Circuit Atty., St. Louis, for respondent.

RENDLEN, Judge.

Charles McClain appeals his conviction of murder first degree and forcible rape upon the jury's verdict, with sentences of life imprisonment to be served consecutively for each crime. We affirm.

Appellant asserts the trial court erred: (1) by the admission of inflammatory photographic evidence showing the deceased victim; and (2) by permitting medical testimony concerning a vaginal smear, taken from the deceased, without proper foundation as to the chain of custody. Since there is no challenge to the sufficiency of the evidence, we will relate only those facts required to resolve the issues raised.

In the early morning hours of October 26, 1970, J__ M__ was raped and later found in an alley where she had been brutally murdered. Two witnesses who were present at the time testified that appellant raped J__ M__ in a park then dragged her into an alley where he beat and stabbed her to death.

■ Appellant first contends that admission of several gruesome photographs of the deceased constitutes error because of their inflammatory character and because they "failed to prove any material fact or condition in issue at trial." This contention is often raised and the law is clear that "admission of a photograph of the body of the deceased in a homicide case rests within the sound discretion of the trial court," *State v. Stevens*, 467 S.W.2d 10, 24[16] (Mo.1971), cert. den. 404 U.S. 994, 92 S.Ct. 531, 30 L.Ed.2d 546 (1971); *State v. Brown*, 524 S.W.2d 188, 190[7] (Mo.App.1975); *State v. Wintjen*, 522 S.W.2d 628, 630[4] (Mo.App. 1975).

"It has generally been held that even though a photograph may be inflammatory it is admissible if it tends to prove any material element of the State's case; this includes the issues of identity, condition and location of the body, nature or location of wounds, and the cause of death; and, generally, if the photograph corroborates the oral testimony of the state or refutes defense testimony it is admissible. (citing cases) And a photo is not made inadmissible because the oral testimony may have described what is shown in the photo . . . if the photo is relevant, it is not excluded because it may be inflammatory, unless the situation is so unusual that the extent of prejudice overrides the relevancy and probative value of the photo."

*State v. Jackson*, 499 S.W.2d 467, 472[6–8] (Mo.1973). See also *State v. Jones*, 515 S.W.2d 504, 506[5–7] (Mo.1974); *State v. Duisen*, 428 S.W.2d 169, 173[1] (Mo. banc 1967), cert. den., 390 U.S. 962, 88 S.Ct. 1063, 19 L.Ed.2d 1159 (1968).

■ The pictures in question were black and white photographs of the corpse showing its position in the alley and the location and extent of the wounds. The photographs, taken at different angles and distances, show various views of the scene and the one morgue shot provided evidence of the wounding, condition of the body, corroboration of oral testimony and identity of the victim. All were described as fair and accurate representations of the objects and scenes shown in the photographs. As stated by the court in *State v. Stevens, supra*, 467 S.W.2d at 24: "If photographic views are shocking, when presenting an accurate picture, it is because the crime is one of that sort, whether described in words or pictures." Similarly in *State v. Jackson, supra*, 499 S.W.2d at 472, the statement that the photograph of the murder victim "could not have inflamed the minds of the jury any more than they were 'otherwise inflamed by the uncontroverted evidence of

these utterly revolting acts of the defendant.'" We find the court did not abuse its discretion admitting the photographs.

■ The next contention of error concerns testimony of Dr. Parks that his examination of a vaginal smear taken from the body of the victim revealed the presence of spermatozoa. The examination by Dr. Parks on the State's behalf was made within two days of the crime. Appellant charges the chain of custody necessary to insure the integrity and probative quality of the smear was not sufficiently shown. In order to establish a chain of custody "the evidence need not exclude every possibility that something in the interim of police possession disturbed or interfered with the exhibit." *State v. Baines*, 394 S.W.2d 312, 316[7] (Mo.1965), cert. den. 384 U.S. 992, 86 S.Ct. 1900, 16 L.Ed.2d 1008 (1966); *State v. McCrary*, 478 S.W.2d 349, 351[2] (Mo.1972); *State v. Rogers*, 523 S.W.2d 344, 348[10] (Mo.App.1975). Here it is sufficient if the evidence shows with reasonable assurance the smear taken from the victim was that examined by the doctor. There is no real question that the condition of the smear itself was sufficient for the purpose of the examination.

■ The State is not required to account for hand-to-hand custody of the evidence between the time it is admitted into evidence nor need it be continually watched to establish a chain of possession. *State v. Rogers*, 523 S.W.2d 344, 348[9] (Mo.App. 1975); *State v. Watson*, 386 S.W.2d 24, 31[11] (Mo.1964), app. dis. 381 U.S. 275, 85 S.Ct. 1458, 14 L.Ed.2d 431 (1965). "The purpose of such a requirement is to prevent tampering or alteration of exhibits or any substitution." *State v. Rose*, 428 S.W.2d 737, 740[3] (Mo.1968); *State v. Taylor*, 486 S.W.2d 239, 243[6] (Mo.1972).

■ Dr. Criscione, pathologist employed by the City Coroner's Office, performed an autopsy and took the questioned vaginal smear on October 26, following the murder and rape earlier that day. He testified the smear was taken from the victim and he personally handed it to Officer Sztakowski of the homicide section of the police department. This officer delivered it that day to the clinical laboratory at Euclid and Laclede for examination.[1] It was there received by a technician, Ms. Breshannon, who signed and issued a receipt to Sztakowski. It was she who prepared the vaginal smear for analysis and brought it to Dr. Parks, who examined the smear and testified to his findings. While the chain of custody was perhaps not fully shown at the time defense counsel first objected, we believe the foundation was adequately established and the sum of the testimony sufficient to prove the examined smear was that taken from the victim and in proper condition to examine for spermatozoa at the clinical laboratory. The judgment of the trial court is affirmed.

SIMEONE, P. J., and GUNN, J., concur.

---

1. There is some confusion as to the date that Sztakowski brought the smear to the laboratory. He testified October 26. Dr. Parks first testified it was the 27th of October but corrected himself, stating the receipt shows Sztakowski delivered the smear on October 26 and that was in fact the date the specimen was brought to the laboratory.