**STATE of Missouri, Respondent,**

v.

**Douglas RAY, Appellant.**

**No. 10400.**

Missouri Court of Appeals,
Springfield District.

Aug. 9, 1977.

Motion for Rehearing or to Transfer to Supreme Court Denied Aug. 24, 1977.

Application to Transfer Denied
Sept. 12, 1977.

John D. Ashcroft, Atty. Gen., Jeffrey M. Schaeperkoetter, Asst. Atty. Gen., Jefferson City, for respondent.

Loren R. Honecker, Springfield, for appellant.

Before TITUS, P. J., and PARRISH, CASTEEL and HENRY, Special Judges.

HERBERT C. CASTEEL, Special Judge.

Defendant was charged with murder in the first degree under prior § 559.010, V.A. M.S., of Cecilio Cardona on September 21, 1973. He was tried under the Second Offender Act, § 556.280, V.A.M.S., in the Greene County Circuit Court. On February 21, 1974, a jury found defendant guilty of manslaughter. § 559.070, V.A.M.S. No after-trial motions were filed and on March 8, 1974, the court sentenced defendant to imprisonment for ten years.

Thereafter defendant sought postconviction relief under Rule 27.26, V.A.M.R. His motion was denied by the trial court but on appeal this court ordered the sentence vacated and defendant permitted to file a motion for new trial. *Ray v. State*, 532 S.W.2d 478 (Mo.App.1975). Defendant's trial counsel being deceased, present counsel was appointed to represent him. Motion for new trial was filed and, on June 8, 1976, was overruled and defendant again sentenced to imprisonment for ten years. This appeal followed.

Defendant relies on three alleged errors. (1) The conduct of the judge during the trial betrayed a bias in favor of the prosecution. (2) The prosecuting attorney acted improperly and in bad faith in cross-examining defendant and in arguing the case to the jury. (3) The court erred in permitting the jury to view State's Exhibit "5", a photograph of the victim's face made after the shooting. However, for the reasons that follow, we affirm.

■ Defendant's first two points were not preserved for review. No objection was made during the trial to any alleged transgressions by the trial judge. The first mention of this is found in the motion for new trial. "A party who believes, however, that the remarks of the court at the trial have prejudiced his cause must object immediately so that the court may correct any erroneous impression. It is not enough to make the claim of prejudice for the first time on the motion for new trial." *State v. Brown*, 524 S.W.2d 188, 189[1–3] (Mo.App.1975).

■ As to the claimed misconduct of the prosecuting attorney in cross-examination of the defendant and his argument to the jury, a careful reading of the transcript shows that each of these incidents was either not objected to, or, when proper objection was made, the objection was sustained and the requested relief granted. When no objection is made to questions asked defendant on cross-examination, nothing is preserved for review. *State v. Lafferty*, 415 S.W.2d 792, 795[1] (Mo.1967). Failure to object to improper argument by the prosecuting attorney has the same consequences. *State v. Carter*, 478 S.W.2d 358, 361[4] (Mo.1972).

■ Defendant suggests, however, that we should consider his first two points as "plain error." Rule 27.20(c), V.A.M.R. Before a court should apply the plain error rule there must be a strong, clear showing that injustice or a miscarriage of justice will otherwise result; and when guilt is established by overwhelming evidence no injustice or miscarriage of justice will result from refusal to invoke the rule. *State v. Wendell*, 542 S.W.2d 339, 343[12–14 and 15, 16] (Mo.App.1976). A brief statement of facts will show this is not a proper case for application of Rule 27.20(c).

On September 20, 1973, defendant, having just lost his job at the Zenith factory in Springfield, had been drinking steadily all day (about one "screwdriver" per hour) but

at no time actually became intoxicated. About 8:30 or 9:00 p. m. he went to a Springfield nightclub known as the Embers Inn. At about 10:00 or 10:30 p. m., Debbie Griffin and her friend Kathy Roberts arrived at the Embers Inn. Defendant had been dating Debbie for two or three weeks and was in love with her and admitted to being jealous of her. The three took a table together but after two other men, friends of Kathy Roberts, joined them, the defendant became angry and moved to another table.

While defendant was at the table with Debbie he showed her a .25 caliber, semiautomatic pistol which he took from his pocket and placed in her purse but at her insistence, he returned it to his pocket before leaving the table. Defendant testified that he was carrying the weapon because he had been assaulted by two strangers on the Embers parking lot two nights earlier. He testified that he normally kept the weapon loaded with a round in the chamber and the safety in the off position ready to fire and that it was in this condition on the night in question. Defendant stated that he had fired the pistol on prior occasions and that it had a "soft" trigger.

Debbie Griffin had previously dated Cecilio Cardona, the victim, but had broken up with him some two or three months earlier because Debbie had decided to go back to her husband. At that time Cardona had struck Debbie causing injuries that required three days' hospitalization. On at least one other occasion he had slapped her, and Debbie was afraid of Cardona and had avoided him. She had told defendant of her fear of Cardona, but defendant had never met Cardona.

Cardona arrived at the Embers Inn before midnight and joined Debbie at her table and began dancing with her. The defendant encountered Debbie near the restrooms and learned Cardona's identity. One witness, Linda Ellingsworth, testified that the defendant pushed Cardona at the restroom door but this was denied by defendant and was not seen by any other witness. She also testified that defendant approached Cardona and Debbie on the dance floor and ordered them outside but this was denied by both defendant and Debbie. It is clear, however, that defendant became increasingly angry, being particularly incensed when Debbie danced "Good Time Charlie" with Cardona, this being "their" (that is, defendant and Debbie's) song.

At this point, Debbie asked Cardona to go outside with her and they were immediately followed by the defendant. Kathy Roberts, who was dancing with Ron Lindsey, observed this and accompanied by Lindsey, followed the defendant outside. Outside the building defendant seized the front of Cardona's clothing with his left hand and pushed him against the wall and held the pistol with his right hand a few inches from Cardona's face. Debbie pleaded with defendant not to shoot Cardona and took hold of his arm but was shoved back against a car by defendant. It is not clear whether either Kathy Roberts or Ron Lindsey took hold of the defendant, but all three witnesses, Debbie, Kathy, and Lindsey, testified that none of them was touching defendant when the pistol was fired.

Defendant testified that he followed Debbie and Cardona outside because he feared for Debbie's safety; that he pushed Cardona against the wall to tell him to leave Debbie alone; that he used the pistol to prevent a fight; that he did not intend to shoot Cardona and did not intentionally pull the trigger; that the pistol was fired accidentally when Cardona took hold of his hand or the pistol and pushed defendant back. Debbie, Kathy, and Lindsey denied that Cardona fought or struggled with defendant but agreed that the pair had moved out away from the wall before the shot was fired.

The bullet entered Cardona's right upper lip just below the right nostril and traveled upward and to the left coming to rest against the left parietal skull which was fractured by the impact. Defendant claimed that he was leaning back when the shot was fired but Ron Lindsey and Kathy Roberts stated that Cardona was bent back-

wards when the shot was fired. Cardona fell to the ground. Defendant told the others to "split," and then left in his car, driving to his residence and transferring to his motorcycle and continuing west on Interstate 44. He was arrested at 3:20 a. m. that same morning by Oklahoma officers at the Glass House Restaurant near Miami, Oklahoma.

■ We find that defendant's guilt of manslaughter was established by overwhelming evidence. Therefore, we do not deem "that manifest injustice or miscarriage of justice has resulted" from the alleged errors set out in defendant's first two points and, since these points were not preserved for review, they are rejected.

Defendant's third point claims error in letting the jury see State's Exhibit "5", which is a photograph of deceased showing the left side of his head with dried blood from the nose and mouth region back to just below the ear. Defendant contends that Exhibit "5" did not prove any fact not otherwise shown by oral testimony and therefore its probative value was negligible and was far outweighed by its prejudicial effect upon the jury.

■ When it is material to the issues, a photograph of the deceased may be admissible in a prosecution for homicide even though it is gruesome or shocking and may tend to excite the passion of the jury, provided the probative value of the exhibit outweighs the danger of prejudice to the accused. It is not a valid objection that the evidence depicted by the photograph has been given by oral testimony or that it is cumulative. In this determination, the trial court owns a wide discretion. *State v. Brown*, supra, 524 S.W.2d at 190[5–8]; *State v. McClain*, 536 S.W.2d 45, 46[1] (Mo. App.1976).

■ When the state first requested leave to show Exhibit "5" to the jury, the trial court denied the request. Later in the trial Linda Ellingsworth testified that she saw the defendant push a man into the restroom door and that it caught her attention because she thought the man being pushed was a Negro. Exhibit "5" shows the deceased to be dark complexioned and with curly hair and was identified by the witness as the man she saw being pushed. The state again requested leave to show the photograph to the jury and the trial court, after examining the exhibit, granted the request. Under these circumstances the trial court did not abuse its discretion in permitting the jury to see the exhibit.

The judgment is affirmed.

All concur.